UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

CIVIL ACTION
NO. 1:10-cv-00110-LM

|  |  |  |
|---|---|---|
| JOHN MICHNOVEZ, Individually and as Executor of the Estate of VELMA MICHNOVEZ and SUSAN MICHNOVEZ, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | PLAINTIFFS CLAIM TRIAL BY JURY |
| BLAIR, LLC, A-ONE TEXTILE AND TOWEL INDUSTRIES, BUREAU VERITAS CONSUMER PRODUCTS SERVICES (PRE) LTD., and BUREAU VERITAS CONSUMER PRODUCTS SERVICES, INC., and BUREAU VERITAS, S.A. | ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |

## SECOND AMENDED COMPLAINT

**FACTUAL ALLEGATIONS**

1. The plaintiff John Michnovez is the son and duly appointed Executor of the Estate of Velma Michnovez, who died on or about November 23, 2007, leaving heirs at law and next of kin. Plaintiff John Michnovez is a resident of the State of New Hampshire.

2. The defendant Blair, LLC is a foreign corporation with a principal place of business at 220 Hickory St., Warren, PA 16365, which does business in the State of New Hampshire.

3. The defendant A-One Textile & Towel Industries is a foreign corporation with a principal place of business at B-43 Estate Avenue, S.I.T.E., Karachi, Pakistan, which does business in the State of New Hampshire.

4. Jurisdiction is based on diversity of citizenship and an amount in controversy in excess of jurisdictional limits.

5. The plaintiffs' cause of action arises from the defendants' (1) transacting business in New Hampshire, (2) contracting to supply goods in New Hampshire, and/or (3) committing tortuous acts in New Hampshire and/or other actions which confer jurisdiction under the New Hampshire long arm statute.

6. The defendant Bureau Veritas Consumer Products Services (Pre) Ltd. ("BV PRE") is a foreign corporation with a principal place of business at 11 Ubi Road 1, Meiban Industrial Building #07-01, Singapore 408723 which does business in the State of New Hampshire.

7. The defendant Bureau Veritas Consumer Products Services, Inc. ("BVCPS") is a Massachusetts corporation with a principal place of business at 100 North Pointe Pkway, Buffalo, NY 14228, which does business in the State of New Hampshire.

8. The defendant Bureau Veritas SA ("BVSA") is a French corporation with a principal place of business at 17 bis, place des Reflets, La Defense 2, 92400 Courbevoie, France which does business in the State of New Hampshire.

9. At all times herein relevant, the defendants BV PRE, BVCPS and BVSA held themselves out as a single global entity known as "Bureau Veritas".  They did so through communications to customers on "Bureau Veritas" stationary and through advertisements and information published on the Internet and otherwise.

10. The defendants, BV PRE and BVCPS were and still are wholly owned subsidiaries of BVSA.

11. At all times herein relevant, the defendant, BV PRE was and still is an agent, department, alter-ego, and/or instrumentality of the defendants BVCPS and BVSA in that these defendants held themselves out as a single global entity such that failure to treat them as such would lead to an inequitable result as to the plaintiffs in this action; in that unity of interest and ownership exists such that the separate personality of BV PRE no longer exists; in that individuals in BVCPS and BVSA exercise substantial control over BV PRE and in that the Bureau Veritas entities share human resources.

12. BV PRE, BVCPS and BVSA and each of them, at all times relevant herein were the partners, agents, employers, employees, joint venturers, representatives, independent contractors, and other persons authorized, actually and/or impliedly, and ostensibly to act within the course and scope of their relationship and/or with the knowledge, consent, ratification and authorization of each of the other defendants.

13. At all times hereinconcerned, the defendant Blair, LLC, was engaged in the design, development, formulation, manufacture, testing, inspection, advertisement, promotion, marketing, packaging, distribution, and sale of chenille bathrobes including model number 30931, which robes were manufactured by defendant A-One.

14. Blair, LLC is the successor in interest of and responsible for the tortious conduct of its predecessor Blair Corporation which at the time of sale of decedent's robe, was engaged in the design, development, formulation, manufacture, testing, inspection, advertisement, promotion, marketing, packaging, distribution and sale of said bathrobe.

15. On or about January 9, 2006, Velma Michnovez purchased a chenille bathrobe, model 30931, from defendant Blair, a mail order catalog sales clothing retailer. The bathrobe was constructed of 100% cotton chenille, a fabric that burns quickly, intensely and fiercely.

16. On or about November 23, 2007 at her home in Alstead, New Hampshire, Velma Michnovez was cooking while wearing Blair robe model 30931. As she reached over her stove, her robe caught fire and burned, resulting in her sustaining burns over 44% of her body, causing her death on that same date.

17. Prior to January 9, 2006, the defendant Blair contracted with BVSA, BVCPS and/or BV PRE to test said model 30931 robe to ensure it complied with federal flammability standards. BV PRE conducted flammability testing on the robe. BVSA, BVCPS and/or BV PRE, in test reports bearing the "Bureau Veritas" logo, certified to Blair that said model 30931 robes complied with federal flammability standards, resulting in said robes being marketed to consumers in the United States, including Velma Michnovez.

18. In April 2009, defendant Blair, in cooperation with the Consumer Product Safety Commission, recalled its model 30931 robes on the basis that they did not comply with federal flammability standards.

19. Prior to receiving notice of said recall, the plaintiffs in this action were not aware and had no reason to be aware that the robe worn by Velma Michnovez on the date of her death did not meet federal flammability standards and was otherwise in an unreasonably dangerous, defective condition.

20. The test results which BVSA, BVCPS and/or BV PRE provided to Blair were a substantial factor in Blair's decision to sell the model 30931 bathrobe to consumers.

**COUNT I:**    **(Wrongful Death vs. Blair)**

21. The death of Velma Michnovez was the direct and proximate result of the carelessness and negligence of the defendant as follows:

   a. The defendant negligently designed, developed, formulated, manufactured, tested, inspected, advertised, promoted, marketed, packaged, distributed, and sold said bathrobe in that it was excessively flammable, designed such that it was easy to ignite, difficult to remove in the event of fire and did not comply with federal flammability standards.

   b. The defendant negligently failed to warn or instruct, adequately warn or adequately instruct concerning the dangers of said bathrobe and the safe and proper method of using it in that it was excessively flammable, designed such that it was easy to ignite, difficult to remove in the event of fire, and did not comply with federal flammability standards.

   c. The defendant negligently failed to inspect or test, adequately inspect or adequately test said bathrobe in that it was excessively flammable, designed such that it was easy to ignite, difficult to remove in the event of fire, and did not comply with federal flammability standards.

   d. The defendant negligently failed to ensure that said bathrobe complied with federal flammability standards.

   e. The defendant negligently failed to recall the bathrobe prior to the incident despite knowledge of its hazards.

22. The defendant expressly and impliedly warranted to the general public and in particular to the decedent that said bathrobe was safe, of merchantable quality, and fit for its intended use and purposes. The defendant breached its warranties to plaintiffs because said product was unsafe, not of merchantable quality, and unfit for the uses for which it was intended as set forth in Paragraph 21 herein. The decedent relied on the warranties made by the defendant and was injured as the direct and proximate result of her reliance on said warranties and as the direct and proximate result of the breaches of warranties by the defendant. Due notice has been given to the defendant of its breaches of warranty.

23. Said defendant placed said defective product in the stream of commerce knowing that it would be used without substantial change and said product proved to be defective as a result of the failure of the defendant to properly inspect, test, market, advertise, sell, and supply said product to prevent it from becoming unreasonably dangerous and unsafe for its foreseeable and intended use as set forth in Paragraph 21 herein

24. As a direct and proximate result of the negligence, breach of warranty, and strict liability of defendant as set forth herein, Velma Michnovez was caused to die. The Executor of her Estate is entitled recover damages including but not limited to the reasonable expenses occasioned to the estate, the value of the loss of her life to decedent, taking into account the probable duration of her life, the amount of income she would have earned over her lifetime, and such other damages allowed by law.

WHEREFORE, plaintiff John Michnovez prays judgment against the defendant together with interest and the costs of this action.

**COUNT II: (Enhanced Compensatory Damages vs. Blair)**

25. The plaintiff John Michnovez repeats the allegations of Count I herein.

26. The actions of defendant were wanton, malicious, or oppressive such that the compensatory damages should reflect the aggravating circumstances.

WHEREFORE, plaintiff John Michnovez prays that enhanced compensatory damages be included in the judgment against defendant together with interest and the costs of this action.

**COUNT III: (Conscious Pain and Suffering vs. Blair)**

27. The plaintiff John Michnovez repeats the allegations of Count I herein.

28. The plaintiff Velma Michnovez suffered consciously up to the moment of her death.

WHEREFORE, plaintiff John Michnovez prays judgment against the defendant together with interest and the costs of this action.

**COUNT IV: (John Michnovez – Personal Injuries vs. Blair)**

29. The plaintiff John Michnovez repeats the allegations of Count I herein.

30. The plaintiff John Michnovez sustained physical injuries in connection with attempting to extinguish the fire on his mother's bathrobe.

WHEREFORE, the plaintiff John Michnovez prays judgment against the defendant together with interest and the cost of this action.

**COUNT V: (John Michnovez – Negligent Infliction of Emotional Distress vs. Blair)**

31. The plaintiff John Michnovez repeats the allegations of Counts I-IV herein.

32. The plaintiff John Michnovez sustained direct emotional shock from being at the scene of the incident and observing the injuries and death of his mother.

33. As a direct result thereof, plaintiff John Michnovez sustained serious mental and emotional strain accompanied by objective physical symptoms.

WHEREFORE, the plaintiff John Michnovez prays judgment against the defendant together with interest and the cost of this action.

**COUNT VI: (Susan Michnovez – Negligent Infliction of Emotional Distress vs. Blair)**

34. The plaintiff Susan Michnovez is the wife of John Michnovez and was the daughter-in-law of Velma Michnovez. She resides with her husband in Alstead, New Hampshire, and resided with and had a close familial relationship with her mother-in-law Velma Michnovez prior to Velma Michnovez's death.

35. The plaintiff Susan Michnovez repeats the allegations of Counts I-IV herein.

36. The plaintiff Susan Michnivez sustained direct emotional shock from being at the scene of the incident and observing the injuries and death of her mother-in-law and the injuries to her husband.

37. As a direct result thereof, plaintiff Susan Michnovez sustained serious mental and emotional strain accompanied by objective physical symptoms.

WHEREFORE, the plaintiff Susan Michnovez prays judgment against the defendant together with interest and the costs of this action.

**COUNT VII:** **(Wrongful Death vs. A-One)**

38. At all times hereinconcerned, defendant A-One knew or should have known that Blair would sell such robes within the United States, including the State of New Hampshire.

39. The death of Velma Michnovez was the direct and proximate result of the carelessness and negligence of the defendant as follows:

   a. The defendant negligently designed, developed, formulated, manufactured, tested, inspected, advertised, promoted, marketed, packaged, distributed, and sold said bathrobe in that it was excessively flammable, designed such that it was easy to ignite, difficult to remove in the event of fire and did not comply with federal flammability standards.

   b. The defendant negligently failed to warn or instruct, adequately warn or adequately instruct concerning the dangers of said bathrobe and the safe and proper method of using it in that it was excessively flammable, designed such that it was easy to ignite, difficult to remove in the event of fire, and did not comply with federal flammability standards.

   c. The defendant negligently failed to inspect or test, adequately inspect or adequately test said bathrobe in that it was excessively flammable, designed such that it was easy to ignite, difficult to remove in the event of fire, and did not comply with federal flammability standards.

   d. The defendant negligently failed to ensure that said bathrobe complied with federal flammability standards.

40. The defendant expressly and impliedly warranted to the general public and in particular to the decedent that said bathrobe was safe, of merchantable quality, and fit for its intended use and purposes. The defendant breached its warranties to plaintiffs because said product was unsafe, not of merchantable quality, and unfit for the uses for which it was intended as set forth in Paragraph 39 herein. The decedent relied on the warranties made by the defendant and was injured as the direct and proximate result of her reliance on said warranties and as the direct and proximate result of the breaches of warranties by the defendant. Due notice has been given to the defendant of its breaches of warranty.

41. Said defendant placed said defective product in the stream of commerce knowing that it would be used without substantial change and said product proved to be defective as a result of the failure of the defendant to properly inspect, test, market, advertise, sell, and supply said product to prevent it from becoming unreasonably dangerous and unsafe for its foreseeable and intended use as set forth in Paragraph 39 herein.

42. As a direct and proximate result of the negligence, breach of warranty, and strict liability of defendant as set forth herein, Velma Michnovez was caused to die. The Executor of her Estate is entitled recover damages including but not limited to the reasonable expenses occasioned to the estate, the value of the loss of her life to decedent, taking into account the probable duration of her life, the amount of income she would have earned over her lifetime, and such other damages allowed by law.

WHEREFORE, plaintiff John Michnovez prays judgment against the defendant together with interest and the costs of this action.

**COUNT VIII: (Enhanced Compensatory Damages vs. A-One)**

43. The plaintiff John Michnovez repeats the allegations of Count VII herein.

44. The actions of defendant were wanton, malicious, or oppressive such that the compensatory damages should reflect the aggravating circumstances.

WHEREFORE, plaintiff John Michnovez prays that enhanced compensatory damages be included in the judgment against defendant together with interest and the costs of this action.

**COUNT IX: (Conscious Pain and Suffering vs. A-One)**

45. The plaintiff John Michnovez repeats the allegations of Count VII herein.

46. The plaintiff Velma Michnovez suffered consciously up to the moment of her death.

WHEREFORE, plaintiff John Michnovez prays judgment against the defendant together with interest and the costs of this action.

**COUNT X: (John Michnovez – Personal Injuries vs. A-One)**

47. The plaintiff John Michnovez repeats the allegations of Count VII herein.

48. The plaintiff John Michnovez sustained physical injuries in connection with attempting to extinguish the fire on his mother's bathrobe.

WHEREFORE, the plaintiff John Michnovez prays judgment against the defendant together with interest and the cost of this action.

**COUNT XI: (John Michnovez – Negligent Infliction of Emotional Distress vs. A-One)**

49. The plaintiff John Michnovez repeats the allegations of Counts VII-X herein.

50. The plaintiff John Michnovez sustained direct emotional shock from being at the scene of the incident and observing the injuries and death of his mother.

51.   As a direct result thereof, plaintiff John Michnovez sustained serious mental and emotional strain accompanied by objective physical symptoms.

WHEREFORE, the plaintiff John Michnovez prays judgment against the defendant together with interest and the cost of this action.

**COUNT XII:** (Susan Michnovez – Negligent Infliction of Emotional Distress vs. A-One)

52.   The plaintiff Susan Michnovez is the wife of John Michnovez and was the daughter-in-law of Velma Michnovez. She resides with her husband in Alstead, New Hampshire, and resided with and had a close familial relationship with her mother-in-law Velma Michnovez prior to Velma Michnovez's death.

53.   The plaintiff Susan Michnovez repeats the allegations of Counts VII-X herein.

54.   The plaintiff Susan Michnovez sustained direct emotional shock from being at the scene of the incident and observing the injuries and death of her mother-in-law and the injuries to her husband.

55.   As a direct result thereof, plaintiff Susan Michnovez sustained serious mental and emotional strain accompanied by objective physical symptoms.

WHEREFORE, the plaintiff Susan Michnovez prays judgment against the defendant together with interest and the costs of this action.

**COUNT XIII:**  (Wrongful Death vs. Bureau Veritas)

56.   Because BV PRE, BVCPS and BVSA acted as a single global entity in connection with its activities in testing and certifying Blair Robe Model 30931, plaintiffs refer to said defendants as Bureau Veritas ("BV") in connection with the allegations of the remaining counts herein.

57. At all times hereinconcerned, defendant BV knew or should have known that if it certified that said chenille bathrobes complied with Federal flammability Standards that its customer Blair would sell such robes within the United States, including the State of New Hampshire.

58. The death of Velma Michnovez was the direct and proximate result of the carelessness and negligence of the defendant as follows:

    a. The defendant negligently tested and inspected said bathrobe and certified to its customer Blair that said robe complied with federal flammability standards, causing Blair to market said robe when it did not comply with federal flammability standards.

    b. The defendant negligently failed to warn or instruct, adequately warn or adequately instruct its customer Blair that said robe did not comply with federal flammability standards, causing Blair to market said robe.

    c. The defendant negligently failed to ensure that said bathrobe complied with federal flammability standards causing its customer Blair to market said robe when in fact said robe failed to comply with federal flammability standards.

    d. The defendant negligently failed to warn and instruct its customer Blair that even if the robe did comply with federal flammability standards when tested, it was nevertheless unreasonably dangerous due to its construction of flammable 100% cotton chenille, a fabric that burns quickly, intensely and fiercely.

59. As a direct and proximate result of the negligence, of defendant as set forth herein, Velma Michnovez was caused to die. The Executor of her Estate is entitled recover damages including but not limited to the reasonable expenses occasioned to the estate, the value of the loss of her life to decedent, taking into account the probable duration of her life, the amount of income she would have earned over her lifetime, and such other damages allowed by law.

WHEREFORE, plaintiff John Michnovez prays judgment against the defendant together with interest and the costs of this action.

**COUNT XIV:** (Enhanced Compensatory Damages vs. Bureau Veritas)

60. The plaintiff John Michnovez repeats the allegations of Count XIII herein.

61. The actions of defendant were wanton, malicious, or oppressive as set forth in Count XIII herein such that the compensatory damages should reflect the aggravating circumstances.

WHEREFORE, plaintiff John Michnovez prays that enhanced compensatory damages be included in the judgment against defendant together with interest and the costs of this action.

**COUNT XV:** (Conscious Pain and Suffering vs. Bureau Veritas)

62. The plaintiff John Michnovez repeats the allegations of Count XIII herein.

63. The plaintiff Velma Michnovez suffered consciously up to the moment of her death.

WHEREFORE, plaintiff John Michnovez prays judgment against the defendant together with interest and the costs of this action.

**COUNT XVI:** (John Michnovez – Personal Injuries vs. Bureau Veritas)

64. The plaintiff John Michnovez repeats the allegations of Count XIII herein.

65. The plaintiff John Michnovez sustained physical injuries in connection with attempting to extinguish the fire on his mother's bathrobe.

WHEREFORE, the plaintiff John Michnovez prays judgment against the defendant together with interest and the cost of this action.

**COUNT XVII:** (John Michnovez – Negligent Infliction of Emotional Distress vs. Bureau Veritas)

66. The plaintiff John Michnovez repeats the allegations of Counts XIII-XVI herein.

67. The plaintiff John Michnovez sustained direct emotional shock from being at the scene of the incident and observing the injuries and death of his mother.

68. As a direct result thereof, plaintiff John Michnovez sustained serious mental and emotional strain accompanied by objective physical symptoms.

WHEREFORE, the plaintiff John Michnovez prays judgment against the defendant together with interest and the cost of this action.

**COUNT XVIII: (Susan Michnovez – Negligent Infliction of Emotional Distress vs. Bureau Veritas)**

69. The plaintiff Susan Michnovez is the wife of John Michnovez and was the daughter-in-law of Velma Michnovez. She resides with her husband in Alstead, New Hampshire, and resided with and had a close familial relationship with her mother-in-law Velma Michnovez prior to Velma Michnovez's death.

70. The plaintiff Susan Michnovez repeats the allegations of Counts XIII-XVI herein.

71. The plaintiff Susan Michnovez sustained direct emotional shock from being at the scene of the incident and observing the injuries and death of her mother-in-law and the injuries to her husband.

72. As a direct result thereof, plaintiff Susan Michnovez sustained serious mental and emotional strain accompanied by objective physical symptoms.

WHEREFORE, the plaintiff Susan Michnovez prays judgment against the defendant together with interest and the costs of this action.

PLAINTIFFS CLAIM TRIAL BY JURY.

The Plaintiffs,
By Their Attorneys,


 /s/James A. Swartz_____
James A. Swartz,
MA BBO #556920
Swartz & Swartz, PC
10 Marshall Street
Boston, MA  02108
617-742-1900


 /s/Alan L. Cantor_____
Alan L. Cantor
MA BBO #072360
Swartz & Swartz, PC
10 Marshall Street
Boston, MA 02108
617-742-1900


/s/David P. Angueira_____
David P. Angueira
NH BBO # 16632
Swartz & Swartz, PC
10 Marshall Street
Boston, MA 02108
617-742-1900