**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

John Michnovez, individually
and as Executor of the Estate
of Velma Michnovez; and
Susan Michnovez

    v.                                    Civil No. 10-cv-110-LM

Blair, LLC; A-One Textile and
Towel Industries; Bureau Veritas
Consumer Products Services (Pre)
Ltd.; Bureau Veritas Consumer
Products Services, Inc.; and
Bureau Veritas, S.A.

**O R D E R**

    In twelve counts, plaintiffs assert nearly identical claims

for wrongful death, enhanced compensatory damages, conscious

pain and suffering, personal injuries, and negligent infliction

of emotional distress against each of two defendants: Blair, LLC

("Blair") (Counts I-V) and A-One Textile and Towel Industries

("A-One") (Counts VII-XI).  Plaintiffs assert the same six

claims against Bureau Veritas, S.A. ("BV S.A."), Bureau Veritas

Consumer Products Services, Inc. ("BV Inc."), and Bureau Veritas

Consumer Products Services (Pre) Ltd. ("BV Ltd.") (Counts XIII-

XVIII).  Plaintiffs' claims arise from the death of Velma

Michnovez, which occurred when a bathrobe she purchased from

Blair caught fire while she was wearing it.  Before the court is

BV Inc.'s motion to dismiss all six of the claims asserted against it.  Plaintiffs object.  For the reasons given, BV Inc.'s motion to dismiss is granted.

### The Legal Standard

A motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  That is, the complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims." Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), a trial court "accept[s] as true all well-pled facts in the complaint and draw[s] all reasonable inferences in favor of plaintiffs." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010)). But, "naked assertions devoid of further factual enhancement need not be accepted." Plumbers' Union, 632 F.3d at 771 (1st Cir. 2011) (quoting Maldonado v. Fontanes, 568 F.3d 263, 266

(1st Cir. 2009)).  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  United Auto., Aero., Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 41 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

     "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  United Auto. Workers, 633 F.3d at 40 (citation omitted).  On the other hand, a Rule 12(b)(6) motion should be granted if "the facts, evaluated in [a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist."  Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (citations omitted).  That is, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  Plumbers' Union, 632 F.3d at 771 (citation omitted).

### Background

     The relevant factual allegations, drawn from plaintiffs' second amended complaint, are as follows.

Velma Michnovez died on November 23, 2007, when a cotton chenille bathrobe she was wearing caught fire while she was cooking at her stove.  She purchased the bathrobe from Blair. The bathrobe was manufactured by A-One.

According plaintiffs, BV Inc.'s actionable conduct consists of the following:

> Prior to January 9, 2006, the defendant Blair contracted with [BV S.A., BV Inc.] and/or [BV Ltd.] to test said model 30931 robe to ensure it complied with federal flammability standards.  [BV Ltd.] conducted flammability testing on the robe.  [BV S.A., BV Inc.] and/or [BV Ltd.], in test reports bearing the "Bureau Veritas" logo, certified to Blair that said model 30931 robes complied with federal flammability standards, resulting in said robes being marketed to consumers in the United States, including Velma Michnovez.
>
> In April 2009, defendant Blair, in cooperation with the Consumer Product Safety Commission, recalled its model 30931 robes on the basis that they did not comply with federal flammability standards.
>
> Prior to receiving notice of said recall, the plaintiffs in this action were not aware and had no reason to be aware that the robe worn by Velma Michnovez on the date of her death did not meet federal flammability standards and was otherwise in an unreasonably dangerous, defective condition.
>
> The test results which [BV S.A., BV Inc.] and/or [BV Ltd.] provided to Blair were a substantial factor in Blair's decision to sell the model 30931 bathrobe to consumers.

Second Am. Compl. (doc. no. 55) ¶¶ 17-20.

The test report that plaintiffs refer to was attached as an exhibit to plaintiffs' motion for leave to file a second amended

complaint.  Given plaintiffs' reference to that report in their
complaint, it is appropriate for the court to consider it when
ruling on BV Inc.'s motion to dismiss.  See United Auto.
Workers, 633 F.3d at 39 ("when a complaint's factual allegations
are expressly linked to – and admittedly dependent upon – a
document (the authenticity of which is not challenged), that
document effectively merges into the pleadings and the trial
court can review it") (quoting Trans-Spec Truck Serv. Inc. v.
Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008)).  Each page
of the test report has, in the upper left-hand corner, an oval-
shaped graphic logo depicting a person, surrounded by the words
"Bureau Veritas 1828."  Pl.'s Mot. for Leave, Ex. B (doc. no.
44-4), at 1.  Below the oval is a bar that reads "MTL – ACTS."
Id.  The first page of the report identifies the tests as having
been conducted by "Bureau Veritas Consumer Products Services
(Pte) Ltd."  Id.  Finally, the bottom of the page lists the
address, telephone number, fax number, e-mail address, and web
address for BV Ltd.  Id.  The stationary provides neither the
name of nor contact information for any other BV entity.

Regarding the relationship among the three BV entities that
are defendants in this case, plaintiffs allege that "[a]t all
times herein relevant, the defendants . . . held themselves out
as a single global entity known as 'Bureau Veritas'.  They did

so through communications to customers on 'Bureau Veritas' stationary and through advertisements and information published on the Internet and otherwise." Second Am. Compl. ¶ 9. The stationary is described above. The portions of the BV web site appended to plaintiffs' motion for leave to file a second amended complaint identify and provide contact information for a BV entity in France and for BV Ltd. While the site mentions labs in Massachusetts, where BV Inc. is incorporated, and New York, where BV Inc. has a principal place of business, the site does not mention BV Inc. in any way.

Plaintiffs also allege that "[t]he defendants, [BV Ltd.] and [BV Inc.] were and still are wholly owned subsidiaries of [BV S.A.]." Second Am. Compl. ¶ 10. Finally, plaintiffs allege:

> At all times herein relevant, the defendant, [BV Ltd.] was and still is an agent, department, alter-ego, and/or instrumentality of the defendants [BV Inc.] and [BV S.A.] in that these defendants held themselves out as a single global entity such that failure to treat them as such would lead to an inequitable result as to the plaintiffs in this action; in that unity of interest and ownership exists such that the separate personality of [BV Ltd.] no longer exists; in that individuals in [BV Inc.] and [BV S.A.] exercise substantial control over [BV Ltd.] and in that the Bureau Veritas entities share human resources.
>
> [BV Ltd., BV Inc. and BV S.A.] and each of them, at all times relevant herein were the partners, agents, employers, employees, joint venturers, representa-tives, independent contractors, and other persons authorized, actually and/or impliedly, and ostensibly

to act within the course and scope of their
relationship and/or with the knowledge, consent,
ratification and authorization of each of the other
defendants.

Id. ¶¶ 11-12.

The heart of plaintiffs' complaint, as it relates to the BV

defendants, is Count XIII, which asserts:

Because [BV Ltd., BV Inc. and BV S.A.] acted as a
single global entity in connection with its activities
in testing and certifying Blair Robe Model 30931,
plaintiffs refer to said defendants as Bureau Veritas
("BV") in connection with the allegations of the
remaining counts herein.

At all times hereinconcerned, defendant BV knew or
should have known that if it certified that said
chenille bathrobes complied with Federal flammability
Standards that its customer Blair would sell such
robes within the United States, including the State of
New Hampshire.

The death of Velma Michnovez was the direct and
proximate result of the carelessness and negligence of
the defendant as follows:

a.    The defendant negligently tested and inspected
said bathrobe and certified to its customer Blair
that said robe complied with federal flammability
standards, causing Blair to market said robe when
it did not comply with federal flammability
standards.

b.    The defendant negligently failed to warn or
instruct, adequately warn or adequately instruct
its customer Blair that said robe did not comply
with federal flammability standards, causing
Blair to market said robe.

c.    The defendant negligently failed to ensure that
said bathrobe complied with federal flammability
standards causing its customer Blair to market

said robe when in fact said robe failed to comply
with federal flammability standards.

d.   The defendant negligently failed to warn and
instruct its customer Blair that even if the robe
did comply with federal flammability standards
when tested, it was nevertheless unreasonably
dangerous due to its construction of flammable
100% cotton chenille, a fabric that burns
quickly, intensely and fiercely.

As a direct and proximate result of the negligence, of
defendant as set forth herein, Velma Michnovez was
caused to die.

Second Am. Compl. ¶¶ 56-59.

By way of further background: (1) Blair, a foreign

corporation with a principal place of business in Pennsylvania,

filed a suggestion of bankruptcy on January 20, 2011, doc. no.

36, but the automatic stay has since been lifted, see doc. no.

53; (2) A-One, a foreign corporation with a principal place of

business in Pakistan, has been served, see doc. no. 48, but has

not appeared; (3) BV S.A., a French corporation with a principal

place of business in France, has not yet been served; and (4) BV

Ltd., a foreign corporation with a principal place of business

in Singapore, has appeared, but has moved to dismiss for lack of

personal jurisdiction, see doc. no. 57.

## Discussion

BV Inc. now moves to dismiss.  Its main argument is that

plaintiffs have not alleged sufficient facts to make it liable

8

for any acts or omissions by BV Ltd. during the course of its testing of the fabric A-One used to make the robe that Blair sold to Velma Michnovez.  Secondarily, BV Inc. argues that plaintiffs have not alleged facts sufficient to support the claim for enhanced compensatory damages they assert in Count XIV.  In its motion to dismiss plaintiffs' amended complaint, which the court said it would consider to the extent it remains relevant to the second amended complaint, BV Inc. challenged the sufficiency of plaintiffs' factual allegations under the Iqbal standard and also advanced the legal argument that it did not owe a duty of care to plaintiffs.  Plaintiffs counter BV Inc.'s first argument for dismissing the second amended complaint by contending that they have alleged sufficient facts to support treating the BV defendants as a single global enterprise under an alter-ego or veil-piercing theory and, on that basis, holding BV Inc. liable for BV Ltd.'s negligent testing and/or inspection of the fabric from which Velma Michnovez's robe was made.  The court does not agree.

Plaintiffs rely primarily on two out-of-state cases involving some of the BV entities that are defendants in this case: Bleu Products, Inc. v. Bureau Veritas Consumer Products Services, Inc., No. CV 08-2591CAS (JCx), 2009 WL 2412413 (C.D. Cal. Aug. 3, 2009) and Playwell Toy, Inc. v. Bureau Veritas

Consumer Products Services, Inc., No. 03-CV-0704C(SC), 2008 WL 4372654 (W.D.N.Y. Sept. 19, 2008).  The argument against veil piercing in Playwell was raised by the corporate parent of the company that actually tested the product rather than by a corporate sibling.  Thus, the reasoning of Playwell has no bearing on the question presented here, which is whether BV Inc. may be held liable for the conduct of its corporate sister, BV Ltd.  Accordingly, the court turns to Bleu Products.

In that case, Bleu Products had a contract with a factory in China to produce jackets and had another contract with Costco to sell those jackets in its stores.  2009 WL 2412413, at *6. In addition, Costco arranged with Bleu Products to have the jackets tested.  To that end, Bleu Products filled out a Costco test-request form, with the understanding that Costco would forward the form to four BV entities, including BV Inc. and BV-Shanghai, the entity that performed the actual testing.  Id. After the jackets were delivered to hundreds of Costco stores, and Costco discovered that the jackets had a significant button defect, see id. at *1, Bleu Products sued a host of BV entities, asserting multiple causes of action, including negligence.  See id.

Two of the BV entities, including BV Inc., moved to dismiss.  Id.  The court denied BV Inc.'s motion to dismiss the

negligence claim, on grounds that the plaintiff had adequately
alleged that BV Inc. was an alter ego of BV-Shanghai, the entity
that performed the testing.  Id. at *11.  Judge Snyder explained
her decision:

> The Court finds that plaintiff's [sic] have
> alleged sufficient facts supporting alter ego
> liability.  First, plaintiff has alleged with
> sufficient facts to support its theory of a unity of
> interest and ownership exists such that separate
> personalities of the corporation no longer exist.  See
> Oddenino & Gaule v. United Financial Group, 1999 U.S.
> App. LEXIS 29506, 1999 WL 1011910 (9th Cir. 1999).
> For example, in support of its "single enterprise
> theory," plaintiff has alleged that a few individuals
> exercised a great deal of control over the various BV
> entities, that different BV entities share virtually
> identical addresses, and that the various entities
> share human resources[.]  See Las Palmas [Associates
> v. Las Palmas Center Associates], 235 Cal. App. 3d
> [1220,] 1249, 1 Cal. Rptr. 2d 301, [318 (Cal. Ct. App.
> 1991)].  Furthermore, plaintiff has sufficiently
> alleged intent on the part of defendants to defraud
> the public through concealment of the nature of the
> single enterprise and misrepresentation of the
> corporate structure, and has adequately set forth
> allegations that could lead to a finding of
> inequitable result.  See Oddenino, 1999 U.S. App.
> LEXIS 29506 at *5, 1999 WL 1011910 ("the purpose of
> the alter ego doctrine is to afford such creditors
> protection where some conduct amounting to bad faith
> makes it inequitable . . . for the equitable owner of
> a corporation to hide behind its corporate veil").
> Therefore, the Court finds dismissal of the alter ego
> allegations at this stage of the proceedings to be
> inappropriate.

Id. at *15 (emphasis added).

Vis à vis the relationship between BV Inc. and BV-Shanghai,
the operative complaint in Bleu Products alleged that BV Inc.:

"(1) was responsible for setting up test protocols that governed
the inspections performed by BV-Shanghai; (2) was directly
involved in monitoring the inspections; and (3) responded by
telephone to plaintiff's complaint concerning the inspection."
Id. at *13.  The complaint further alleged that BV Inc.: "(1)
was responsible for establishing contracts to which BV-Shanghai
is alleged as a party; (2) is named in the Costco 'Request'
form; and (3) caused BV-Shanghai to perform the inspection as an
alter ego of other named defendants."  Id.  Finally, the Bleu
Products complaint alleged that BV Inc. "knew that an inspection
report was fraudulent prior to shipment of the jackets, and that
[BV Inc.] directly participated in evading responsibility by
calling plaintiff and launching an allegedly phony
investigation."  Id. at *14.  Based on those factual
allegations, Judge Snyder agreed with the plaintiffs "that,
under the single-enterprise rule, [BV Inc.] can be found liable
as an alter ego of BV-Shanghai in spite of the fact that [BV
Inc.] and BV-Shanghai are sister companies."  Id. at *13 (citing
Las Palmas, 1 Cal. Rptr. 2d at 318).

     In Las Palmas, on which Judge Snyder relied, the California
Court of Appeals explained:

          Generally, alter ego liability is reserved for
     the parent-subsidiary relationship.  However, under
     the single-enterprise rule, liability can be found
     between sister companies.  The theory has been

12

described as follows: "'In effect what happens is that
the court, for sufficient reason, has determined that
though there are two or more personalities, there is
but one enterprise; and that this enterprise has been
so handled that it should respond, as a whole, for the
debts of certain component elements of it.  The court
thus has constructed for purposes of imposing
liability an entity unknown to any secretary of state
comprising assets and liabilities of two or more legal
personalities; endowed that entity with the assets of
both, and charged it with the liabilities of one or
both.'" (2 Marsh's Cal. Corp. Law (3d ed. 1990) §
16.23, p. 1416, quoting a law review article by
Professor Berle found at 47 Colum. L. Rev. (1947) 343,
350.)

1 Cal. Rptr. 2d at 318.

The rather complex factual situation in Las Palmas
consisted of the following: (1) two corporations, Devcorp and
Hahn, plus several others, were the sellers of a shopping
center, 1 Cal. Rptr. 2d at 305; (2) Devcorp was a wholly owned
subsidiary of Hahn, id.; (3) Hahn transferred all the shares of
Devcorp to Trizec Centers, which, in turn, conveyed some of
those shares to Goldlist Acquisition Corp. and the remainder to
Trizec Equities, id. at 306.  In a dispute between the sellers
and the buyers of the shopping center, Hahn argued that the
buyers were not entitled to pierce the corporate veil and hold
it liable for Devcorp's conduct.  Id. at 316-17.  The California
Court of Appeals held that veil piercing was appropriate, under
the legal principles articulated above:

We find there is substantial evidence to support
the conclusion that Hahn, Inc. and Devcorp formed a

13

single enterprise for the purpose of committing a
continuing fraud against buyers.  First, the evidence
that Hahn, Inc. had guarantied $43.2 million in loans
and loan commitments to Devcorp strongly suggests
Devcorp was undercapitalized for a company in the
business of developing shopping centers.  Likewise, in
1978 Hahn, Inc. issued two guaranties to buyers to
protect the $2 million cash downpayment they made to
Devcorp.  Moreover, besides the loan guaranties, Hahn,
Inc. temporarily guarantied the Phanny's Phudge lease,
despite the fact that Hahn, Inc. no longer had a stock
ownership interest in Devcorp.  These guaranties
indicate that Devcorp's survivability as a developer
was intertwined with its dependence on Hahn, Inc.

Furthermore, Ernest Hahn and Robert Lees sat as
directors on the boards of Hahn, Inc. and Devcorp.
When Devcorp's board of directors fired the
corporation's executives and staff, Hahn, Inc. used
its employees, including its corporate counsel, to
continue to manage what remained of the business.  In
short, the trial court reasonably could have concluded
that Hahn, Inc. and Devcorp were combined into a
single enterprise to defraud buyers.

Id. at 318.

Just as the judge in Bleu Products relied on Las Palmas,

the Las Palmas court relied on Pan Pacific Sash & Door Co. v.

Greendale Park, Inc., 333 P.2d 802 (Cal. Dist. Ct. App. 1958).

In Pan Pacific, a supplier of building materials sued multiple

defendants, including two corporations, Ralmor and Greendale, to

recover the cost of various materials delivered to Ralmor, which

was constructing houses on land owned by Greendale.  Id. at 803,

805.  The trial court determined that Greendale was an alter ego

of Ralmor for the purpose of assuming liability for Ralmor's

14

debts to Pan Pacific, and the court of appeals affirmed.  <u>Id.</u> at 806.

In affirming, the appellate court relied on the following evidence: (1) the corporations had nearly identical shareholders, officers, and directors, <u>id.</u> at 805; (2) "[b]oth corporations' offices were located in the same premises and they had at least some employees in common," <u>id.</u>; (3) "the only business of the [two] corporations . . . was the construction of the houses upon the tract in question and the sale thereof," <u>id.</u> at 806; (4) each corporation had made numerous loans to the other, <u>id.</u>; and (5) both corporations operated largely on money borrowed from two individuals who were officers, directors, and shareholders of both corporations, <u>id.</u>  Based on those facts, the court concluded:

> [T]he trial court was warranted in concluding, as it did, that each corporation was but an instrumentality or conduit of the other in the prosecution of a single venture, namely, the construction and sale of houses upon the tract in question.  Both corporations had the same stockholders, directors and officers, occupied the same premises as their offices and had common employees.  Each was without substantial capital. When Greendale was without funds required for its operation and Ralmor had funds available a loan was made from the latter to the former and vice versa. Each corporation received the benefit of the materials supplied by the plaintiff and incorporated in the houses which were under construction upon the tract. There was such unity of interest and ownership that the separateness of the two corporations had in effect ceased and an adherence to the fiction of a separate existence of the two corporations would, under the

15

circumstances here present, promote injustice and make
it inequitable for Greendale to escape liability for
an obligation incurred as much for its benefit as for
Ralmor.

Id. (citation omitted).

There are at least three problems with plaintiffs' reliance

on Bleu Products: (1) Bleu Products was decided under a rule of

California law that does not appear ever to have been adopted in

New Hampshire; (2) the facts alleged in Bleu Products are

substantially different from the facts plaintiffs allege in this

case; and (3) plaintiffs fail to make allegations sufficient to

establish injustice or fraud, which is necessary for veil

piercing in New Hampshire.  The court considers each issue in

turn.

A. New Hampshire Veil-Piercing Law

Because both parties operate as if New Hampshire veil-

piercing law applies, the court, too, proceeds on the

presumption that it does.  As the court of appeals for this

circuit has explained, "[w]here 'there is at least a reasonable

relation between the dispute and the forum whose law has been

selected by the parties, we will forego an independent analysis

of the choice-of-law issue and apply' the state substantive law

selected by the parties."  Platten v. HG Berm. Exempted Ltd.,

437 F.3d 118, 127 n.5 (1st Cir. 2006) (quoting <u>Fed. Ins. Co. v.</u>
<u>Raytheon Co.</u>, 426 F.3d 491, 496 n.2 (1st Cir. 2005)).

To be sure, it would be legitimate to question the
reasonable relation between New Hampshire and a dispute over
piercing the veil between a Singapore corporation and a
Massachusetts corporation to hold the latter liable for the
conduct of the former.  And, one might reasonably argue that the
appropriate veil-piercing law to apply here is the law of
Singapore.  <u>See</u> <u>Patin v. Thoroughbred Power Boats Inc.</u>, 294 F.3d
640, 647 (5th Cir. 2002) (holding that in diversity case brought
in the Middle District of Louisiana, district court correctly
determined "that the Louisiana State Supreme Court would most
likely conclude that the law of the state of incorporation
governs the determination when to pierce a corporate veil").
But, the court is reluctant to resolve a legal issue the parties
have not raised and, so, applies New Hampshire veil-piercing
law.

That said, the most obvious problem with plaintiffs'
reliance on <u>Bleu Products</u> is that there is no support in the
decisions of the New Hampshire Supreme Court for applying the
"single-enterprise rule" on which Judge Snyder relied in <u>Bleu</u>
<u>Products</u>.  In New Hampshire, "[t]he doctrine of piercing the
corporate veil is an equitable remedy."  <u>LaMontagne Bldrs., Inc.</u>

17

v. Bowman Brook Purchase Grp., 150 N.H. 270, 274 (2003) (quoting

Terren v. Butler, 134 N.H. 635, 640 (1991)).

> When courts pierce the corporate veil, they "assess
> individual liability where the owners have used the
> corporate identity to promote injustice or fraud."
> Norwood Group v. Phillips, 149 N.H. 722, 724 (2003).
> They "disregard the fiction that the corporation is
> independent of its stockholders and treat the
> stockholders as the corporation's 'alter egos.'"   Id.

N.E. Homes, Inc. v. R.J. Guarnaccia Irrevocable Trust, 150 N.H.

732, 737-38 (2004) (parallel citation omitted).  In addition,

the New Hampshire Supreme Court "will pierce the corporate veil

and assess individual liability . . . where a [shareholder] has

suppressed the fact of incorporation . . . and where an

individual expressly agrees to personal liability for a

corporation's debts."  Gautschi v. Auto Body Discount Ctr.,

Inc., 139 N.H. 457, 462 (1995) (citing Peter R. Previte, Inc. v.

McAllister Florist, Inc., 113 N.H. 579, 582 (1973); Ashland

Lumber Co. v. Hayes, 119 N.H. 440, 441 (1979)).  Similarly, veil

piercing is appropriate where a shareholder "creates a false

appearance which causes a reasonable creditor to misapprehend

the worth of the corporate obligor."  Previte, 113 N.H. at 583

(quoting Comment, Ohio St. L.J. 441, 468 (1967)).

"New Hampshire courts do not 'hesitate[ ] to disregard the

fiction of the corporation' when circumstances would lead to an

inequitable result."  Terren, 134 N.H. at 639-40 (quoting

18

<u>Druding v. Allen</u>, 122 N.H. 823, 827 (1982)).  But, at the same time, the New Hampshire Supreme Court recognizes that "one of the desirable and legitimate attributes of the corporate form of doing business is the limitation of the liability of the owners to the extent of their investment."  <u>LaMontagne</u>, 150 N.H. at 275 (quoting <u>Previte</u>, 113 N.H. at 582).

Based on the foregoing, in New Hampshire, corporate veil piercing and the alter-ego doctrine have been used to do one thing only: hold the owners of corporations liable for the debts of the corporations they own.  Plaintiffs have identified no authority, and the court's research has identified none, for the proposition that New Hampshire would, if presented with the question, adopt a single-enterprise theory such as California's, under which an entity other than a the owner of a corporation could be held liable for that corporation's conduct by means of veil piercing.  Moreover, in an opinion in which it rejected a plaintiff's claim that it was entitled to hold an individual liable for the debts of two corporations he controlled, the New Hampshire Supreme Court stated that "the fact that one person controls two corporations is not sufficient to make the two corporations and the controlling stockholder the same person under the law."  <u>Vill. Press, Inc. v. Stephen Edward Co.</u>, 120

N.H. 469, 471 (1980) (citing Waff Bros., Inc. v. Bank of N.C., N.A., 221 S.E.2d 273 (N.C. 1976)).

Plaintiffs' argument that New Hampshire does, in fact, recognize the single-enterprise theory, as applied in Bleu Products, is not persuasive.  Plaintiffs base their argument on Norwood.  However, the only veil-piercing issue the court decided in Norwood was that "the plaintiffs' equitable petition to pierce the corporate veil [was] governed by the twenty-year statute of limitations for actions to enforce a judgment."  149 N.H. at 725.  The court "remand[ed] [the veil-piercing petition] to the trial court to address its merits."  Id. at 727. Moreover, while the Norwood court found persuasive the reasoning of Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 608 F. Supp. 1261 (S.D.N.Y. 1985), aff'd in part, rev'd in part, 933 F.2d 131 (2d Cir. 1991), the only reasoning from Passalacqua that the Norwood court applied was what Judge Edelstein had to say about the proper statute of limitations, see 149 N.H. at 725.  Beyond that, the decision in Passalacqua did not resolve any veil-piercing or alter-ego issues on the merits.  See 608 F. Supp. at 1265.  Finally, the veil piercing at issue in Norwood was a garden-variety attempt to hold corporate shareholders liable for the debts of the corporation, see 149 N.H. at 723, not an attempt to hold a corporate entity

20

liable for the conduct of its corporate sibling.  Thus, <u>Norwood</u> simply did not involve the question presented in this case.

In sum, <u>Norwood</u> provides no support for the proposition that New Hampshire subscribes to the single-enterprise theory that Judge Snyder applied in <u>Bleu Products</u>.  Given that plaintiffs' claims against BV Inc. are based upon a principle of law not yet adopted in New Hampshire, this court is perhaps not the best forum for pursuing a claim that depends on piercing the corporate veil between BV Inc. and BV Ltd.  "This court is and should be hesitant to blaze new, previously uncharted state-law trails."  <u>Pimental v. Dartmouth-Hitchcock Clinic</u>, 236 F. Supp. 2d 177, 188 (D.N.H. 2002) (quoting <u>Dennis v. Husqvarna Forest & Garden Co.</u>, Civ. No. 94-309-M, 1994 WL 759187, at *7 (D.N.H. Dec. 27, 1994)).  Accordingly, "'[l]itigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed' through the field of state common law."  <u>Minion Inc. v. Burdin</u>, 929 F. Supp. 521, 526 (D.N.H. 1996) (quoting <u>Ryan v. Royal Ins. Co.</u>, 916 F.2d 731, 744 (1st Cir. 1990)); <u>see also</u> <u>Gill v. Gulfstream Park Racing Ass'n, Inc.</u>, 399 F.3d 391, 402 (1st Cir. 2005) ("A federal court sitting in diversity cannot be expected to create new doctrines expanding state law.") (citing <u>A. Johnson & Co. v. Aetna Cas. & Sur. Co.</u>, 933 F.2d 66, 73 n.10

(1st Cir. 1991)).  Because plaintiffs' single-enterprise theory
does not appear to be the law of New Hampshire, BV Inc. is
entitled to dismissal of the claims plaintiffs assert in Counts
XIII through XVIII.

### B. The Factual Allegations Concerning BV Inc.

Even if New Hampshire law did permit plaintiffs to assert a
claim against BV Inc. to recover for BV Ltd.'s alleged
negligence under a veil-piercing or alter-ego theory such as the
one employed in Bleu Products and Pan Pacific, the facts alleged
by plaintiffs in this case are so unlike the facts supporting
veil piercing under California law that BV Inc. would still be
entitled to dismissal of plaintiffs' claims against it.

Before turning to an analysis of plaintiffs' factual
allegations, however, it is important to clarify things just a
bit.  While plaintiffs' second amended complaint attempts to
make one big defendant out of BV S.A., BV Inc. and BV Ltd., what
is really at issue is plaintiffs' attempt to pierce the
corporate veil between BV Inc. and BV Ltd. so as to hold BV Inc.
liable for BV Ltd.'s conduct.  To the extent that plaintiffs
attempt to create one unitary BV entity out of a parent company
and two of its subsidiaries, in which each component entity is
responsible for the conduct of every other component entity,
plaintiffs not only rely on a theory the New Hampshire Supreme

court appears to have rejected, see Village Press, 120 N.H. at
471, but they also seem to extend the "single-enterprise theory"
beyond even its application in California.

In Pan Pacific, the court pierced the corporate veil
between Ralmor and Greendale in order to hold Greendale liable
for Ralmor's debts.  See 333 P.2d at 806.  In Las Palmas, the
court described the single-enterprise rule as allowing liability
to flow between "sister companies," and created a single-
enterprise composed of only two corporations.[1]  See 1 Cal. Rptr.
2d at 318.  In Bleu Products, which involved BV S.A., BV Inc.,
and BV-Shanghai, both the plaintiff and the court treated the
relationships between BV S.A. and each of its two subsidiaries
separately.  See 2009 WL 2412413, at *13-*15.  Thus, the court
appears to have regarded BV S.A. and BV-Shanghai as a single
enterprise and BV Inc. and BV-Shanghai as a single enterprise,
rather than treating BV S.A., BV Inc., and BV-Shanghai as one
three-component single enterprise.  In other words, plaintiffs
have identified no case in which a court has created anything
other than a two-entity single enterprise, which means that they
have identified no authority for the creation of the three-

---

[1] The Las Palmas court also quoted a California treatise's
quotation of a 1947 law-review article that mentioned the
possibility of a single enterprise composed of "two or more
legal personalities," 1 Cal. Rptr. 2d at 318, but, again, the
single enterprise the Las Palmas court actually created was
composed of only two legal personalities.

entity single enterprise they ask the court to create here.
Thus, under the California single-enterprise veil-piercing
theory, as applied by the courts that decided Bleu Products, Las
Palmas, and Pan Pacific, plaintiffs can state claims against BV
Inc. only to the extent they allege facts which, if true, would
support a determination that BV Inc. was BV Ltd.'s alter ego.
They have not done so.

Plaintiffs' clearest factual allegations are that: (1) BV
Ltd. conducted flammability testing on the fabric A-One used to
make the robe Blair sold to Velma Michnovez; and (2) BV Inc. and
BV Ltd. are wholly owned subsidiaries of BV S.A.  Rather more
fuzzy are plaintiffs' allegations that: (1) Blair contracted
with BV S.A., BV Inc., and/or BV Ltd. to perform fabric testing;
(2) BV S.A., BV Inc. and/or BV Ltd. certified to Blair that the
fabric met certain flammability standards.  Plaintiffs also
allege that BV S.A., BV Inc., and BV Ltd. held themselves out as
a single global entity through the stationary used for BV Ltd.'s
report to Blair, described above, and through a web site,
portions of which are attached as an exhibit to plaintiffs'
motion for leave to file a second amended complaint.  The
testing report plaintiffs attached to their motion for leave to
file a second amended complaint bears a generic "Bureau Veritas"
logo but includes the name of only one of the three BV entities

24

named as defendants in this case, BV Ltd.  Finally, plaintiffs
allege, again without much precision, that: BV Ltd. was "an
agent, department, alter-ego, and/or instrumentality" of BV S.A.
and BV Inc.; (2) individuals in BV S.A. and BV Inc. exercised
substantial control over BV Ltd.; (3) all three entities shared
human resources; and (4) all three entities "were the partners,
agents, employers, employees, joint venturers, representatives,
independent contractors" of each other.

Nowhere does the second amended complaint make a specific
factual allegation linking BV Inc. and BV Ltd.  Rather,
plaintiffs make allegations, generally conclusory, linking all
three entities with the conjunction "and/or," or they make
allegations that link BV Ltd. to BV S.A. and BV Inc., without
differentiating between BV S.A. and BV Inc., and without further
identifying specific links between BV Ltd. and BV Inc.

By contrast, in Bleu Products, the operative complaint
contained numerous specific factual allegations concerning the
relationship between BV Inc. and BV-Shanghai.  Specifically, the
plaintiffs in Bleu Products alleged that BV Inc.: (1) set up the
testing protocols used by BV-Shanghai, 2009 WL 2412413, at *13;
(2) monitored the inspections conducted by BV-Shanghai, id.; (3)
responded to the plaintiff's complaint about the inspection
conducted by BV-Shanghai, id.; (4) established the contract

between the plaintiff and BV-Shanghai, id.; (5) was named in the
Costco request form, id.; (6) caused BV-Shanghai to conduct the
testing at issue, id.; (7) knew that the testing report prepared
by BV-Shanghai was fraudulent before the jackets were shipped to
Costco, id. at *14; and (8) telephoned the plaintiffs and
initiated an allegedly phony investigation into BV Ltd.'s
inspection, id.  The differences between the factual allegations
in Bleu Products and this case are dramatic, so much so that the
court concludes that, in this case, the allegations purporting
to establish alter-ego liability fail to meet the pleading
standards established by Iqbal.  Plaintiffs have simply failed
to make factual allegations concerning BV Inc.'s conduct
sufficient to make BV Inc. liable for the acts or omissions of
BV Ltd. under California's single-enterprise theory.

In like manner, the facts alleged in the second amended
complaint are, with one exception, substantially different from
the facts of Pan Pacific.  In Pan Pacific, the plaintiff proved
that the shareholders of Ralmor were R.L. Blink, M.S. Hoffberg,
and their wives, while the shareholders of Greendale were Blink
and Hoffberg.  333 P.2d at 805.  Here, plaintiffs allege that BV
Inc. and BV Ltd. are both wholly owned subsidiaries of BV S.A.
But there the similarity ends.

In Pan Pacific, the plaintiff proved that the directors of
Ralmor were Blink, Hoffberg, and their wives, while the
directors of Greendale were Blink, Hoffberg, and their attorney,
who stopped attending board meetings approximately one month
after Greendale was incorporated.  333 P.2d at 805.  Here,
plaintiffs allege no facts concerning the directors of BV Inc.
and BV Ltd.  In Pan Pacific, the plaintiff proved that the
officers of both Ralmor and Greendale were Blink and Hoffberg.
Id.  Here, plaintiffs allege no facts concerning the officers of
BV Inc. and BV Ltd.  In Pan Pacific, the plaintiff demonstrated
co-mingling of assets by proving a pattern of loans between
Ralmor and Greendale.  Id. at 806.  Here, plaintiffs allege no
facts that would support a finding that BV Inc. and BV Ltd. co-
mingled their assets.  In Pan Pacific, the plaintiff
demonstrated undercapitalization by proving that both Ralmor and
Greendale operated largely on borrowed money, were heavily
indebted, and unable to pay their obligations.  Id.  Here,
plaintiffs allege no facts that would support a finding that
either BV Inc. or BV Ltd. was undercapitalized.  Aside from
common ownership, plaintiffs in this case allege none of the
factors that inspired the court in Pan Pacific to pierce the
corporate veil between Ralmor and Greendale.

To conclude, even if the California single-enterprise rule were the law of New Hampshire, plaintiffs have not alleged facts sufficient to justify piercing the corporate veil between BV Inc. and BV Ltd.

### C. Insufficient Allegations of Injustice or Fraud

Finally, even if New Hampshire recognized California's single-enterprise rule, and even if plaintiffs had adequately alleged conduct by BV Inc. of the sort that would subject it to liability for BV Ltd.'s conduct, plaintiffs' claims against BV Inc. would still be subject to dismissal for a failure to adequately allege injustice or fraud.

As the court has already noted, in New Hampshire, "[w]hen courts pierce the corporate veil, they 'assess individual liability where the owners have used the corporate identity to promote injustice or fraud.'" N.E. England Homes, 150 N.H. at 737 (quoting Norwood, 149 N.H. at 724)).  As for what constitutes injustice or fraud, the New Hampshire Supreme Court has explained:

> In determining whether it is appropriate to apply the alter ego doctrine, other courts have inquired whether the corporation is undercapitalized, IZE Nantan Bagowa, Ltd. v. Scalia, [577 P.2d 725 (Ariz. Ct. App. 1978)]; Harris v. Curtis, 87 Cal. Rptr. ([Cal. Ct. App.] 1970), and whether the stockholder is using the corporation to further his own private business rather than that of the corporation.  House of Koscot Dev. Corp. v. American Line Cosmetics, Inc., 468 F.2d 64

28

(5th Cir. 1972); Holahan v. Henderson, 277 F. Supp.
890 (W.D. La. 1967); Kirk v. H.G.P. Corp., 494 P.2d
1087 ([Kan.] 1972).

Village Press, 120 N.H. at 471 (parallel citations and

subsequent history omitted).

In LaMontagne, the New Hampshire Supreme Court affirmed the

trial court's decision to pierce the corporate veil and find a

corporation's owner, R. Scott Brooks, liable for the

corporation's debts to the plaintiff based on the following

findings:

> (1) Brooks breached an express promise to LaMontagne
> and LBI to pay LBI out of the April 30, 1997 loan
> proceeds; (2) Brooks made the promise to pay LBI in
> order to stop LaMontagne from filing a mechanic's lien
> or interfering with the loan; (3) Brooks knew that the
> promise to pay LBI when confirmed and documented by
> Attorney Cleary would cause LaMontagne to not file a
> mechanic's lien or interfere with the bank loan; (4)
> Brooks had no intention of honoring the promise to pay
> LBI; (5) Brooks breached his promise to pay LBI
> without good cause; (6) Brooks' claimed reasons for
> breaching the promise to pay LBI were disingenuous and
> raised in bad faith; and (7) Brooks, his family, or
> his family-controlled business received most or all of
> the loan proceeds.

150 N.H. at 275.

In Terren, the New Hampshire Supreme Court affirmed the

trial court's decision to pierce the corporate veil and hold a

corporation's shareholders liable when the trial court "found

that the substantial depletion of corporate assets by defendants

Butler [the shareholders] after being advised that defects

29

existed in the project provides a sufficient basis to find that defendants Butler used the corporate entity to promote an injustice and/or fraud on the plaintiffs." 134 N.H. at 640. The evidence on which the trial court relied included the following: (1) the defendants were the sole shareholders and directors of the corporation whose veil was pierced; (2) the defendants never paid the stated consideration for their shares in the corporation; (3) the defendants paid themselves compensation of over $150,000 in each of two successive years; (4) the defendants received nearly $250,000 in repayment of shareholder loans; (5) the defendants received more than $90,000 in stock distributions; and (6) the corporation's sole asset was a condominium project valued at $100,000.  Id.

LaMontagne and Terren are the only two opinions since 1945 in which the New Hampshire Supreme Court has ruled veil piercing to be appropriate.  In this case, plaintiffs' second amended complaint makes no allegations of injustice or fraud that come close to the injustice or fraud at issue in LaMontagne and Terren.  In both of those cases, the owners of the corporations in question enriched themselves out of corporate coffers, leaving the corporations themselves with insufficient resources to pay their debts, and in LaMontagne, Brooks upped the ante by making repeated misrepresentations to the corporation's

creditors.  Here, by contrast, plaintiffs make no specific

allegations concerning the relationship between BV Ltd. and the

target of the veil piercing, BV Inc.  Thus, plaintiffs do not

allege any abuse or misuse of BV Ltd.'s corporate form by BV

Inc., much less that BV Inc. benefitted from any such abuse.

In their objection to BV Inc.'s motion to dismiss,

plaintiffs argue:

> It is known and alleged that failure to apply the
> single enterprise theory here will result in injustice to
> the plaintiffs.  While [BV Inc.] claims that plaintiffs
> have pointed to no injustice, that argument is undercut
> by the recent filing by [BV Ltd.] of a motion to dismiss,
> arguing lack of personal jurisdiction in New Hampshire.
> That of course is the point of this entire master plan
> concocted by [BV S.A.] – to create small, under-
> capitalized testing entities in the far corners of the
> world, exert pervasive control over those entities, and
> then to argue that consumers in states such as New
> Hampshire cannot recover for negligently conducted
> testing due to lack of personal jurisdiction.  Such a
> system must not be sanctioned; in fact, avoidance of such
> injustice is the precise justification for the doctrine
> of disregarding "the fiction of the corporation when
> circumstances would lead to inequitable results[.]"  One
> of these inequitable results is to allow a defendant to
> ignore the corporate form in order to evade personal
> jurisdiction.

Pl.'s Obj. (doc. no. 59), at 7-8 (quoting N. Laminate Sales,

Inc. v. Matthews, 249 F. Supp. 2d 130, 141 (D.N.H. 2003); citing

Newport News Holdings Corp. v. Virtual City Vision, Inc., ___

F.3d ___, ___, 2011 WL 1467183, at *4-*5 (4th Cir. Apr. 18,

2011); Patin, 294 F.3d at 653 n.18).  The second amended

complaint, however, contains no allegations about BV Ltd.'s

capitalization, no allegations that BV Inc. created BV Ltd., and no allegations that BV Inc., on its own, exerted any control over BV Ltd.  That is, while plaintiffs' objection posits some sort of unified global BV entity, the second amended complaint does not even include the kind of conclusory allegations found adequate by the Bleu Products court, see 2009 WL 2412413, at *13, to establish the injustice/fraud element of a veil-piercing claim.

Finally, notwithstanding plaintiffs' reliance on Newport News and Patin, the opinions in those cases provide no support for plaintiffs' argument for veil piercing.  Plaintiffs' primary claim of injustice is that this court may lack personal jurisdiction over BV Ltd., the entity plaintiffs charge with negligently testing the material from which Velma Michnovez's robe was made.  Without more, however, the mere fact that plaintiffs may not be able to sue BV Ltd. in this forum is insufficient to establish injustice.  See Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1379 (10th Cir. 1980) (holding that, under Oklahoma law, "the possible inconvenience to plaintiff . . . in suing Bethlehem Singapore in another forum is [not] the type of injustice which warrants piercing the corporate veil").  Claims fail for lack of personal jurisdiction all the time

without any cognizable injustice being done to the unsuccessful

plaintiff.

In Newport News, which involved a traditional veil piercing

to reach the owner of a corporation, the court noted:

> [F]ederal courts have consistently acknowledged that
> it is compatible with due process for a court to
> exercise personal jurisdiction over an individual
> . . . that would not ordinarily be subject to personal
> jurisdiction in that court when the individual . . .
> is an alter ego . . . of a corporation that would be
> subject to personal jurisdiction in that court.

___ F.3d at ___, 2011 WL 1467183, at *4 (quoting Patin, 294 F.3d

at 653 n.18).  In Newport News, the injustice was that the forum

the plaintiff selected had personal jurisdiction over a

corporation that allegedly harmed the plaintiff, but lacked

personal jurisdiction over an out-of-forum individual who was

the corporation's alter ego.  Based on the identity between the

out-of-forum owner and the corporation over which the court had

personal jurisdiction, the court pierced the veil between the

corporation and its owner to hold the owner personally liable

for the corporation's actions.  Id. at *5.

This case is the inverse of Newport News.  The court has

personal jurisdiction over the entity plaintiffs seek to hold

liable, i.e., BV Inc.; what is potentially missing is personal

jurisdiction over the entity that allegedly committed tortious

acts against plaintiffs.  So, rather than seeking to pierce a

33

corporate veil to pull in out-of-forum assets to provide
compensation for unlawful in-forum conduct, plaintiffs here seek
to pierce a corporate veil to pull in out-of-forum conduct in
the hope of holding an in-forum party liable for it.  The bottom
line is this: the rule from Patin restated in Newport News seems
inapplicable to the facts of this case.  Shielding assets by
keeping them out of a forum in which the asset holder is doing
business through an alter ego, which is what the corporate owner
in Newport News did, is very different from being the corporate
sibling of an out-of-forum entity alleged to have engaged in
unlawful conduct, which is the claim in this case.

Based on the foregoing, it could be that the better legal
theory is not veil piercing, but vicarious liability.  In
Luckett, a case in which the plaintiffs attempted to hold an
American corporation liable for the acts of its Singapore
subsidiary, the court of appeals affirmed the trial court's
grant of summary judgment to the defendants on the plaintiffs'
veil-piercing theory, see 618 F.2d at 1378-79, but reversed and
remanded the trial court's grant of summary judgment to the
defendants on the plaintiffs' vicarious liability theory, see
id. at 1379-83.  Unfortunately for plaintiffs in this case, even
if they had invoked the theory of vicarious liability, their
complaint does not allege sufficient facts that, if proven,

would establish an agency relationship between BV Inc. and BV
Ltd. sufficient to make BV Inc. liable for the acts and
omissions of BV Ltd.  See Dent v. Exeter Hosp., Inc., 155 N.H.
787, 792 (2007) (describing the elements of the relationship
that must be proven to make a principal vicariously liable for
the conduct of its agent); Porter v. City of Manchester, 151
N.H. 30, 39-40 (2004); Boissonnault v. Bristol Fed'd Church, 138
N.H. 476, 477-78 (1994).  Because plaintiffs have not adequately
alleged an agency relationship between BV Inc. and BV Ltd., they
have failed to establish an adequate basis for holding BV Inc.
vicariously liable for BV Inc.'s conduct.

In sum, plaintiffs have failed to allege sufficient facts
to establish the injustice/fraud element of a veil-piercing
claim, and have also failed to allege facts sufficient to
support a claim that BV Inc. is vicariously liable for the acts
and omissions of BV Ltd.

### Conclusion

As the court has explained: (1) the single-enterprise
theory of corporate veil piercing is not the law of New
Hampshire; (2) plaintiffs have failed to allege conduct by BV
Inc. that would subject BV Inc. to liability under California's
single-enterprise veil-piercing theory; (3) plaintiffs have
failed to adequately allege the injustice/fraud element of a New

35

Hampshire veil-piercing claim; and (4) plaintiffs have not alleged sufficient facts to state a claim that BV Inc. is vicariously liable for BV Ltd.'s conduct.  Accordingly, BV Inc.'s motion to dismiss (doc. no. 50) is granted.

     SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

Date:  June 13, 2011

cc:  David P. Angueira, Esq.
     Eric K. Blumenfeld, Esq.
     Alan L. Cantor, Esq.
     Joel Thomas Emlen, Esq.
     Dona Feeney, Esq.
     Bruce W. Felmly, Esq.
     James C. Fitzpatrick, Esq.
     D. Patterson Gloor, Esq.
     Theodore V.H. Mayer, esq.
     Steven M. Shear, Esq.
     Edward M. Swartz, Esq.
     Jori L. Young, Esq.