### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE


John Michnovez, individually
and as Executor of the Estate
of Velma Michnovez; and
Susan Michnovez

    v.                                    Civil No. 10-cv-110-LM

Blair, LLC and A-One Textile
and Towel Industries


### <u>O R D E R</u>


Before the court is plaintiffs' response to the court's

order to show cause why their claims against A-One Textile and

Towel Industries ("A-One") should not be dismissed for failure

to effect timely service.  In their response, plaintiffs point

out that they filed a return of service on February 24, 2011,

and argue that their service on A-One complied with the relevant

provisions in the Federal Rules of Civil Procedure ("Federal

Rules").  Based upon plaintiffs' response, the court can neither

agree that their attempt at service was effective nor conclude

that it was defective.  Necessarily, then, plaintiffs have

failed to establish that the filing they made on February 24 is

evidence of timely effective service.  For that reason,

plaintiffs' claims against A-One are dismissed without prejudice.[1]

According to plaintiffs' amended complaint, A-One is a foreign corporation with a principal place of business in Karachi, Pakistan.  To effect service of their amended complaint on A-One, plaintiffs retained Crowe Foreign Services, a business that specializes in serving process around the world.  According to Celeste Ingalls, Crowe's Director of Operations, "standard service in Pakistan via the designated Central Authority is unreliable at best, with all but one request for service in the past 48 months completed and returned (unserved)."  Pls.' Resp., Ingalls Decl. (doc. no. 81-1) ¶ 4.  Presumably for that reason, Crowe engaged a private process server to make service on A-One. On February 24, 2011, plaintiffs filed the affidavit of a Pakistani resident indicating that he or she[2] had personally served the amended complaint on Mr. Haji Muhammad Ashraf, who is

---

[1] While it is not the court's place to suggest litigation strategy, plaintiffs' attempts to bring in far-flung defendants have always been a bit puzzling, given the potential availability of a complete recovery from Blair under the doctrine of strict liability, which theory plaintiffs have at least recognized in their second amended complaint, albeit in the context of claims that appear to sound in negligence.

[2] In the affidavit, the name of the process server is handwritten and indecipherable.

identified as "Owner/Director" of A-One Textile and Towel Industries.  A-One has not appeared.

The question before the court is whether plaintiff's attempt to serve A-One was effective.  "[O]nce challenged, plaintiffs have the burden of proving proper service."  Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992) (citing Saez Rivera v. Nissan Mfg. Co., 788 F.2d 819, 821 n.2 (1st Cir. 1986); Aetna Bus. Credit, Inc. v. Universal Decor & Int. Design, Inc., 635 F.2d 434, 435 (5th Cir. 1981)).

To be served "at a place not within any judicial district of the United States, [A-One must be served] in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."[3]  Fed. R. Civ. P. 4(h)(2). Rule 4(f), in turn provides:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served at a place not within any judicial district of the United States:

---

[3] It has been held that while Rule 4(h)(2) prohibits personal delivery under Rule 4(f)(2)(C)(i), it does not prohibit personal delivery under Rule 4(f)(2)(A).  See Tow v. Rafizadeh, (In re Cyrus II P'ship), 392 B.R. 248, 259 (Bankr. S.D. Tex. 2008) ("Rule 4(f)(2)(A) is a separate provision from Rule 4(f)[(2)](C)(i).  The exclusion by Rule 4(h)(2) of Rule 4(f)(2)(C)(i) as a means of service of process does not affect the applicability of Rule 4(f)(2)(A).").

**(1)** by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

**(2)** if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

    **(A)** as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

    **(B)** as the foreign authority directs in response to a letter rogatory or letter of request; or

    **(C)** unless prohibited by the foreign country's law, by:

        **(i)** delivering a copy of the summons and of the complaint to the individual personally; or

        **(ii)** using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

**(3)** by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Pertinent to Rule 4(f)(1), the United States and Pakistan are signatories to The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (hereinafter "Hague Service Convention" or "the convention"). By its own terms, the convention provides that it "shall apply in all cases, in civil or commercial matters, where

there is occasion to transmit a judicial or extrajudicial document for service abroad."  Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163; see also Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988).

Articles 3 through 6 of the convention authorize service through the "Central Authority" of the country where the entity to be served resides, also known as the "State of destination." The convention further states:

> Provided the State of destination does not object, the present convention shall not interfere with—
>
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
>
> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Service Convention art. 10.  Finally, the convention provides:

> To the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding

articles, of documents coming from abroad, for service
within its territory, the present Convention shall not
affect such provisions.

Id. art. 19.

According to plaintiffs, they made effective service on A-
One because they served A-One in accordance with Article 10(c)
of the Hague Service Convention, and Pakistan has registered no
objection to service under Article 10(c).  The court is not
persuaded.

While Pakistan's position on Article 10(c) is not entirely
clear, it has not formally objected to service under that
provision of the convention.  Pakistan has expressly stated that
it has no objection to Articles 10(a) and (b).  See Table
Reflecting Applicability of Articles 8(2), 10(a)(b) and (c),
15(2) and 16(3) of the Hague Service Convention,
http://www.hcch.net/upload/applicability14e.pdf (last visited
Oct. 27, 2011).  Pakistan's statement of objections, however,
does not say anything about Article 10(c) one way or the other.
Thus, Pakistan has not expressly objected to Article 10(c).  For
that reason, the court will operate under the presumption that
Pakistan's affirmative non-objection to Articles 10(a) and (b)
applies equally to Article 10(c).

In their response to the court's show-cause order, plaintiffs rely on two cases from the state courts of New York, Casa De Cambio Delgado, Inc. v. Casa De Cambio Puebla, S.A. de C.V., 763 N.Y.S.2d 434 (N.Y. Sup. Ct. 2003), and Vazquez v. Sund Emba AB, 548 N.Y.S.2d 728 (N.Y. App. Div. 1989), for the proposition that "[w]here a signatory state to the Hague Convention does not object to service made pursuant to Article 10(c) . . . that service is valid." Pls.' Resp., at 2. Delgado and Vasquez, however, are not federal cases, and for service in this case to be proper, it must comply with the Federal Rules, which were not a part of the decisional framework in Delgado and Vasquez.

Rule 4(f)(1) requires service "by any internationally agreed means of service . . . such as those authorized by the Hague [Service] Convention." The forms of service mentioned in Article 10 are not internationally agreed means of service authorized by the Hague Service Convention. See Brockmeyer v. May, 383 F.3d 798, 803-04 (9th Cir. 2004) ("Article 10(a) does not itself affirmatively authorize international mail service. It merely provides that the Convention 'shall not interfere with' the 'freedom' to use postal channels if the 'State of destination' does not object to their use."). Rather, the means

of service authorized by the Hague Service Convention are: (1) use of the State of destination's Central Authority, as authorized by Articles 3 through 6; (2) use of a contracting State's own diplomatic or consular agents, as authorized by Article 8; and (3) use of "those authorities of another contracting State which are designated by the latter for this purpose," as authorized by Article 9.  Thus, Rule 4(f)(1) plus Article 10(c) plus personal delivery does not, as plaintiffs would have it, add up to effective service.[4]

Indeed, in most cases in which federal courts have determined that personal service on a foreign corporation was effective under the Federal Rules, they have done so not under Rule 4(f)(1), on which plaintiffs rely, but under Rule 4(f)(2)(A), which allows service "as prescribed by the foreign country's law for service in that country in an action in its

---

[4] There is one case in which a court appears to have used the same calculus on which plaintiffs rely, but the court in that case did something plaintiffs here have not done: it analyzed the rules of civil procedure of the State of destination in the same way that courts analyze such rules when assessing the effectiveness of service under Rule 4(f)(2)(A). See Dimensional Commc'ns, Inc. v. OZ Optics Ltd., 218 F. Supp. 2d 653, 656 (D.N.J. 2002) ("Courts have also looked to the internal service rules of the destination State to determine whether that State would object to the particular method of service utilized under Article 10.") (citing Hunt's Pier Assocs. v. Conklin (In re Hunt's Pier Assocs.), 156 B.R. 464, 470 (Bankr. E.D. Pa. 1993)).

courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A).[5]
For example, in Tow v. Rafizadeh (In re Cyrus II Partnership),
the district court, in reliance on Rule 4(f)(2)(A), denied the
defendant's Rule 12(b)(5) motion to dismiss for insufficient
service of process because: (1) the plaintiff had made personal
service on a Hong Kong corporation; and (2) the law of Hong Kong
expressly permitted personal service on corporations. See 392
B.R. 248, 259 (Bankr. S.D. Tex. 2008); see also Retractable
Techs., Inc. v. Occup'l & Med. Innovs., Ltd., 253 F.R.D. 404
(E.D. Tex. 2008) (denying defendant's Rule 12(b)(5) motion where
defendant corporation was personally served in Australia and
Australian law permitted personal service on corporations).

    As the Court of Appeals explained in Nuance Communications
v. Abbyy Software House, "a corporation can be served by
personal delivery under Rules 4(h)(2) and 4(f)(2)(A), provided
that personal delivery is prescribed by the foreign country's
laws for service in that country in an action in its courts of
general jurisdiction," 626 F.3d 1222, 1238 (Fed. Cir. 2010); see
also Retractable Techs., 253 F.R.D. at 405 ("Rule 4(f)(2)(A)

------

    [5] As the text of Rule 4(f)(2) makes clear, that rule applies
both in situations where "there is no internationally agreed
means," or, in situations such as the one presented here, where
"an international agreement allows but does not specify" the
means at issue. See Cyrus II, 392 B.R. at 253.

allows personal service when foreign law specifically provides for personal service.").  Finally, and perhaps most tellingly, in Cyrus II, where the court determined that personal service on a foreign corporation was effective under Rule 4(f)(2)(A), the court also said that Article 10 of the Hague Service Convention – on which plaintiffs in this case rely – was irrelevant.

Based on the foregoing, the court concludes that the proper vehicle for effective personal service on a foreign corporation is Rule 4(f)(2)(A), not Rule 4(f)(1).  Because Rule 4(f)(2)(A) only allows forms of service that are "prescribed by the foreign country's law for service in that country," the opinions in cases such as Cyrus II and Retractable Technologies devote considerable attention to analyzing the laws of the foreign countries in which service has been attempted.  See Cyrus II, 392 B.R. at 254-59; Retractable Techs., 253 F.R.D. at 406-07. Even in Dimensional Communications, Inc. v. OZ Optics Ltd., in which the court appears to have approved of personal service on a foreign corporation under Rule 4(f)(1) and Article 10(c), the court analyzed Canadian law in the context of its determination that Canada did not object to personal service on corporations. See 218 F. Supp. 2d 653, 656 (D.N.J. 2002).

Here, however, plaintiffs say nothing about the relevant Pakistani law other than offering the following statement from Ingalls' declaration: "Service by a private server is not prohibited by law in Pakistan."  Ingalls Decl. ¶ 7.  Leaving aside the distinction between the affirmative prescription required by Rule 4(f)(2)(A) and the mere lack of a prohibition, it is not at all clear that Ingalls' observation addresses the relevant question, which is what Pakistani law says about how corporate defendants are to be served.  Moreover, because the content of Pakistani law is, by definition, a question of law rather than a factual matter, Ingalls' declaration is not particularly helpful.

In any event, even if it were inclined to do so, the court could not treat plaintiffs' argument for effective service as being based on Rule 4(f)(2)(A), and then conduct the requisite analysis.  Plaintiffs, who have the burden of proving effective service, see Rivera-Lopez, 979 F.2d at 887, have cited no Pakistani law, which leaves the court without any basis for making a determination that the way in which plaintiffs attempted to serve A-One was a means of service "prescribed by [Pakistan]'s law for service in [Pakistan] in an action in [Pakistan's] courts of general jurisdiction," Fed. R. Civ. P.

4(f)(2)(A).  And, even if Rule 4(f)(1) is applicable, plaintiffs' failure to cite the relevant Pakistani law leaves the court unable to perform the kind of Article 10 analysis the court performed in <u>Dimensional Communications</u>.

Based on the foregoing, plaintiffs' case against A-One stands on an awkward footing.  If their attempted service on A-One was proper under the Federal Rules, then A-One has been served in a timely manner and plaintiffs would be free to seek relief based on A-One's failure to appear.  But, as explained above, plaintiffs have not provided an adequate legal basis to support their argument that service was proper.  By the same token, the court has no basis for affirmatively ruling that service was defective.  That said, the question before the court is whether plaintiffs have demonstrated timely service on A-One. They have not.

### Conclusion

For the reasons given, plaintiffs' claims against A-One are dismissed, for lack of timely service, but that dismissal is without prejudice to filing a new claim against A-One and effecting service in compliance with Pakistan's "law for service

in [Pakistan] in an action in Pakistan]'s courts of general

jurisdiction."  Fed. R. Civ. P. 4(f)(2)(A).

      SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge


October 31, 2011

cc:  David P. Angueira, Esq.
     Eric K. Blumenfeld, Esq.
     Alan L. Cantor, Esq.
     Joel Thomas Emlen, Esq.
     Dona Feeney, Esq.
     Bruce W. Felmly, Esq.
     James C. Fitzpatrick, Esq.
     D. Patterson Gloor, Esq.
     Theodore V.H. Mayer, Esq.
     Steven M. Shear, Esq.
     Edard M. Swartz, Esq.
     Jori L. Young, Esq.