**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

John Michnovez, individually
and as Executor of the Estate
of Velma Michnovez; and
Susan Michnovez

    v.                                          Civil No. 10-cv-110-LM
                                                Opinion No. 2012 DNH 114
Blair, LLC

**O R D E R**

This suit arises from the death of Velma Michnovez ("Mrs.
Michnovez").  Plaintiffs, her son and daughter-in-law, have sued
Blair, LLC ("Blair"), which sold Mrs. Michnovez the bathrobe she
was wearing at the time she sustained fatal injuries as a result
of a cooking accident.  In their Second Amended Complaint,
plaintiffs assert claims for Mrs. Michnovez's wrongful death
(Count I), enhanced compensatory damages (Count II), Mrs.
Michnovez's conscious pain and suffering (Count III), personal
injuries to John Michnovez (Count IV), and negligent infliction
of emotional distress on John Michnovez (Count V) and Susan
Michnovez (Count VI).  Before the court is Blair's motion for
summary judgment.  Plaintiffs object.  For the reasons that
follow, Blair's motion for summary judgment is granted in part
and denied in part.

### Summary Judgment Standard

"To prevail on summary judgment, the moving party must show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Markel Am. Ins. Co. v. Diaz-Santiago, 674 F.3d 21, 29 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). "[A]n issue of fact is genuine if 'a reasonable jury could resolve it in favor of either party.'" Markel, 674 F.3d at 29-30 (quoting Basic Controlex Corp. v. Klockner Moeller Corp., 202 F.3d 450, 453 (1st Cir. 2000)). "A fact is material if it 'might affect the outcome of the suit' under governing law." Markel, 674 F.3d at 29 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "In determining whether a genuine issue of material fact exists, [the court] construe[s] the evidence in the light most favorable to the non-moving party and make[s] all reasonable inferences in that party's favor." Markel, 674 F.3d at 30 (citing Flowers v. Fiore, 359 F.3d 24, 29 (1st Cir. 2004)).

"The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)). "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." <u>Noonan v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." <u>Sánchez-Rodríguez v. AT&T Mobility P.R., Inc.</u>, 673 F.3d 1, 9 (1st Cir. 2012) (quoting <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006)). "However, 'a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden.'" <u>Sánchez-Rodríguez</u>, 673 F.3d at 9 (quoting <u>DePoutot v. Raffaelly</u>, 424 F.3d 112, 117 (1st Cir. 2005)). "Rather, the party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his [or her] claim." <u>Sánchez-Rodríguez</u>, 673 F.3d at 9 (quoting <u>Soto-Ocasio v. Fed. Ex. Corp.</u>, 150 F.3d 14, 18 (1st Cir. 1998)) (internal quotation marks omitted).

### Background

As required by Rule 7.2(b)(1) of the Local Rules of this district, Blair's memorandum of law "incorporate[s] a short and concise statement of material facts, supported by appropriate record citations, as to which [it] contends there is no genuine issue to be tried." While plaintiffs argue at several points

3

that genuine issues of material fact preclude summary judgment, their memorandum of law does not "incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which [they] contend[ ] a genuine dispute exists so as to require a trial."  LR 7.2(b)(2). Accordingly, "[a]ll properly supported material facts set forth in [Blair]'s factual statement shall be deemed admitted."  Id.

In January of 2006, Mrs. Michnovez purchased a bathrobe from Blair, a clothing retailer.  In November of 2007, she sustained fatal burns while wearing that robe, which caught on fire when she was alone in her apartment.  Plaintiffs, who lived downstairs from Mrs. Michnovez, first realized that she was in trouble when they heard the smoke alarm in her apartment go off. In response, they ran upstairs and found Mrs. Michnovez in the bathroom shouting "I'm on fire."  Over the course of approximately thirty seconds, John Michnovez ("John") put out the fire, burning himself in the process.  Later that day, Mrs. Michnovez died.

Mrs. Michnovez was the only witness to the start of the fire.  Susan Michnovez ("Susan") recalls hearing her mother-in-law say that she was reaching over the back burner of her gas stove when the sleeve of her bathrobe ignited.  It appears to be undisputed that Mrs. Michnovez was cooking at the time of her accident.

John does not know how long his mother's bathrobe was on fire before he got upstairs or how quickly the fire spread once the robe ignited.  Susan does not know whether the sleeves on Mrs. Michnovez's robe were rolled up or how long they were, how long the robe was exposed to the burner flame before it ignited, or how quickly the fire spread.  Mrs. Michnovez never told anyone how quickly the fire spread or how long she was on fire.[1]

Susan was not physically injured by the fire.  She has had nightmares about it, but has not sought treatment from a psychiatrist, psychologist, or therapist for any mental or emotional condition resulting from the fire.  Her activities have not been limited in any way as a result of her alleged emotional distress.

## Discussion

Blair moves for summary judgment on all of plaintiffs' claims on grounds that plaintiffs have failed to produce evidence that any characteristic of Mrs. Michnovez's bathrobe was the proximate cause of her fatal injury.  In addition, Blair makes specific arguments for summary judgment on two of the five

---

[1] Because John and Susan were not with Mrs. Michnovez when the fire started, they also do not know which hand she was cooking with, which burner or burners she was using, or what she did immediately after the fire started.

negligence theories stated in Count I.[2]  Blair also makes
specific arguments concerning Counts II, V, and VI.  Plaintiffs
concede that Blair is entitled to summary judgment on: (1) the
failure-to-recall claim stated in Count I at paragraph 21(e);
and (2) Count V, John's claim for negligent infliction of
emotional distress.  In this section, the court turns first to
Blair's argument on proximate cause, and then addresses its
arguments on: (1) the failure-to-warn claim stated in Count I at
paragraph 21(b); (2) Count II, plaintiffs' claim for enhanced
compensatory damages; and (3) Count VI, Susan's claim for
negligent infliction of emotional distress.

### A. Proximate Cause

Blair concludes its memorandum of law with an argument that
all of plaintiffs' claims require proof of causation, and that
without an eyewitness to the start of the fire,

> there is no evidence as to how the fire started, what
> exactly Mrs. Michnovez was doing at the time the fire
> started, what part of the bathrobe caught fire and
> when, how long the robe was exposed to the flame
> before it burned, how long the bathrobe burned before
> the smoke alarm sounded, or what evasive action (if

--------

[2] Count I of plaintiffs' Second Amended Complaint is a
cornucopia of claims.  Paragraph 21 asserts five negligence
theories: negligent design, ¶ 21(a); failure to warn, ¶ 21(b);
failure to inspect or test, ¶ 21(c); failure to insure that Mrs.
Michnovez's bathrobe complied with federal flammability
standards, ¶ 21(d); and failure to recall the bathrobe, ¶ 21(e).
Paragraph 22 asserts a breach-of-warranty claim.  Paragraph 23
asserts a claim for strict product liability.

> any) Mrs. Michnovez took to either put out the fire or
> attempt to remove the robe.

Def.'s Mem. of Law (doc. no 85-1), at 21.  Blair continues:

"Absent such evidence, it is purely speculative to attribute the

proximate cause of the fire to the characteristics of the

bathrobe about which plaintiffs complain."  Id.  Plaintiffs

contend that they have produced sufficient evidence to create a

triable issue on the element of causation, including an expert

opinion based on, among other things, the expert's testing of a

robe similar to the one Mrs. Michnovez was wearing when she

suffered her fatal injuries.

In response to plaintiffs' objection to summary judgment,

Blair points out that "[w]hen the matter [of causation] remains

one of pure speculation and conjecture, or the probabilities are

at best evenly balanced, it becomes the duty of the court to

direct a verdict for the defendant."  Def.'s Reply (doc. no.

88), at 9 (quoting Ricci v. Alt. Energy Inc., 211 F.3d 157, 162

(1st Cir. 2000) (citation omitted)) (emphasis in Ricci).  Blair

next clarifies its position: "In the instant case, the

inferences that can be drawn from the facts simply do not permit

the conclusion that this fire more likely occurred as a result

of a product defect versus an inadvertent accident."  Def.'s

Reply, at 9 (emphasis in the original).

As a preliminary matter, Blair is correct that plaintiffs'

claims in both negligence and strict liability require proof of

causation.  See White v. Asplundh Tree Expert Co., 151 N.H. 544, 547 (2004) ("To recover on a claim of negligence, a plaintiff must establish that a defendant breached its duty of care and that the breach proximately caused the claimed injury.") (citing Weldy v. Town of Kingston, 128 N.H. 325, 330 (1986)); Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 824 (2005) ("Under the doctrine of strict liability, '[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer.'") (quoting Price v. BIC Corp., 142 N.H. 386, 388 (1997); citing Restatement (Second) of Torts § 402A(1) (1965)); see also Wilson v. Bradlees of N.E., Inc., 250 F.3d 10, 15 n.6 (1st Cir. 2001) ("Under New Hampshire law, strict liability, as well as negligence, requires proof of causation.") (citing Thibault v. Sears, Roebuck & Co., 118 N.H. 802, 809 (1978)).

In a recent opinion in a medical-negligence action, the New Hampshire Supreme court described the principles of causation:

> The concept of proximate cause includes both the cause-in-fact and the legal cause for the injury. [Bronson v. Hitchcock Clinic, 140 N.H. 798, 801 (1996)].  Conduct is cause-in-fact if the injury . . . would not have occurred without that conduct.  Id. The evidence to support this causal link must be "sufficient to warrant a reasonable juror's conclusion that the causal link between the negligence and the injury probably existed."  Id.; see also Goudreault v. Kleeman, 158 N.H. 236, 246 (2009); RSA 507-E:2, I(c). This standard is satisfied if the evidence shows "with reasonable probability, not mathematical certainty,

> that but for the defendant's negligence, the harm
> would not have occurred."  Bronson, 140 N.H. at 802–
> 03.  "[L]egal cause requires a plaintiff to establish
> that the negligent conduct was a substantial factor in
> bringing about the harm."  Estate of Joshua T. v.
> State, 150 N.H. 405, 408 (2003).  "Although the
> negligent conduct need not be the sole cause of the
> injury, to establish proximate cause a plaintiff must
> prove that the defendant's conduct caused or
> contributed to cause the harm."  Id.

Beckles v. Madden, 160 N.H. 118, 124-25 (2010).

While Blair has identified the relevant legal principles, its argument misses the mark in at least two significant ways. Blair's reluctance to acknowledge the legitimacy of circum-stantial evidence as proof of causation is an analytical misstep.  See Emery v. Tilo Roofing Co., 98 N.H. 165, 167 (1937); Ricci, 211 F.3d at 162-163; cf. Masse v. Commercial Union Ins. Co., 136 N.H. 628, 633 (1993).  But, the larger problem with Blair's argument is its reliance on Ricci.

In Ricci, which was decided under Maine law,[3] see 211 F.3d at 161-62, an environmental worker testing emissions from a biomass stack at a power plant, David Ricci, fell eighty feet to his death, see id. at 158-59.  "There were no eyewitnesses to Ricci's fall."  Id. at 160.  At summary judgment, the district

---

[3] Maine law and New Hampshire law run parallel in all relevant respects.  Compare Ricci, 211 F.3d at 162 ("Under Maine law, proximate cause may be established entirely through circumstantial evidence.") (citing Thompson v. Frankus, 115 A.2d 718, 720 (Me. 1955), with Emery, 89 N.H. at 167 ("This does not mean, however, that physical causation must always be proved by an eyewitness to the fact.  As in the case of other questions of fact, a finding upon the issue of causation may be made as an inference from evidentiary facts.").

court was presented with two competing explanations for Ricci's
fall, each based on circumstantial evidence.  Id. at 159.
Finding "one inference no more likely than the other and,
because the plaintiff could not prevail if the inferences were
evenly balanced, [the district court] entered summary judgment
dismissing plaintiff's claim."  Id.  On appeal,

> [t]he primary question [was] whether, on the
> materials submitted on summary judgment, a factfinder
> could find only that the competing inferences
> explaining Ricci's cause of death are equally
> probable, or whether the evidence would permit the
> factfinder to infer that one explanation, on which
> plaintiff's negligence claim rests, is the more
> probable cause of Ricci's falling to his death.

Id. (emphasis added).  The court of appeals "conclude[d] that it
was error for the district court to grant summary judgment for
the defendants."  Id.

In its opinion, the court began its causation analysis by
stating the rule of law on which Blair relies in this case:

> The trial court stated that the plaintiff could
> not prevail if the only conclusion that could
> reasonably be drawn was that the probabilities of
> plaintiff's and defendants' competing theories as to
> what caused Ricci's fall were evenly matched.  The
> trial court's statement was accurate.  "A mere
> possibility of such causation is not enough; and when
> the matter remains one of pure speculation and
> conjecture, or the probabilities are at best evenly
> balanced, it becomes the duty of the court to direct a
> verdict for the defendant."  Restatement (Second) of
> Torts § 433B cmt. a (emphasis added); accord Champagne
> v. Mid-Maine Med. Ctr., 711 A.2d 842, 845 (Me. 1998)
> (stating that a tort plaintiff must establish
> causation to avoid summary judgment and that "judgment
> as a matter of law in a defendant's favor is proper
> when any jury verdict for the plaintiff would be based

on conjecture or speculation"); Unobskey v. Continental Ins. Co., 147 Me. 249, 257-58, 86 A.2d 160 (Me. 1952) ("Conjecture [and] choice of possibilities . . . [are] not proof.  There [must be] something more to lead a reasoning mind to one conclusion rather than to the other.") (internal quotation marks omitted) (second alteration in original).  Given that the burden of proof is on a plaintiff to show that it was more likely than not that the defendant's negligence caused the harm, the trial judge's method of analysis was appropriate.  Cf. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (explaining that summary judgment should be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Ricci, 211 F.3d at 162 (parallel citations omitted).  Based on the foregoing principles, and under de novo review, see id. at 163, the court of appeals held that a reasonable jury could find the plaintiff's explanation for Ricci's fall more probable than the defendants' explanation.  See id.  Thus, while endorsing the legal principles applied by the district court, the court of appeals held that the district court had misapplied those principles to the facts of the case before it.

This case is distinguishable from Ricci in at least two key respects that render the rule of law stated therein inapplicable to the question before this court.  First, this is not a case involving two competing theories based exclusively on inferences from circumstantial evidence.  In Ricci, the plaintiff claimed that Ricci fell to his death when he accidentally stepped into an unguarded opening in the platform on which he was working, while the defendants theorized, from the same circumstantial

evidence (consisting of the location of tools, work gloves, and safety devices on the platform), that Ricci fell as he was about to descend a ladder leading down from the platform.  See id. at 159.  Here, by contrast, all agree that Mrs. Michnovez died from burns she received when her robe caught fire while she was cooking.  What the parties dispute is how quickly the robe ignited and how fast the flames spread.  Blair relies on the fact that plaintiffs have no eyewitness evidence to establish the speed with which the fire spread, while plaintiffs note the expert opinions they have produced on that matter, which are based on more than informed inferences from the circumstantial evidence.  Thus, this case is not analogous to Ricci.  See 211 F.3d at 164 (declining to consider expert opinions where those opinions were based on circumstantial evidence and "individual practical experiences and notions of common sense").

There is another even more important distinction between Ricci and this case.  In Ricci, the decedent fell to his death either when he unknowingly stepped through an unguarded opening in the platform on which he was working, or as he attempted to descend a ladder.  And, according to the court of appeals, it was for the jury to determine which theory was more likely, not for the judge to determine, as a matter of law, that they were equally likely.  Here, Blair attempts to describe competing inferential theories locked in equipoise: "In the instant case,

the inferences that can be drawn from the facts simply do <u>not</u> permit the conclusion that this fire more likely occurred as a result of a product defect versus an inadvertent accident." Def.'s Reply (doc. no. 88), at 9.

The problem is that Blair has set up a false dichotomy. The two theories advanced in <u>Ricci</u> were mutually exclusive; Ricci either fell through an unguarded opening or he slipped while climbing down a ladder.  But the two theories Blair identifies, accidental ignition and an overly flammable robe, are not mutually exclusive, and the jury will not be called upon to find one more likely than the other.  Moreover, as the New Hampshire Supreme Court has explained, there is no requirement that a plaintiff prove a single cause of his or her injuries. <u>See</u> Beckles, 160 N.H. at 124 ("the negligent conduct need not be the sole cause of the injury") (citation omitted).

Plaintiffs do not dispute that Mrs. Michnovez's death resulted, in part, from an inadvertent accident, reaching across a lit burner on her gas stove.  The basis of their claims against Blair, however, is that Mrs. Michnovez's death was <u>also</u> caused by a defect in her bathrobe, that defect being the physical characteristics that caused the cotton chenille from which the robe was made to catch fire too easily and to burn too quickly once ignited.  On those matters, plaintiffs have produced expert evidence.  Because plaintiffs need only prove

that the physical characteristics of Mrs. Michnovez's robe were
a substantial factor in bringing about her death, but not the
sole factor, see Beckles, 160 N.H. at 124, and because that
theory is not inconsistent with the theory that Mrs. Michnovez's
robe made contact with the flame on her stove by accident, there
is nothing in Ricci that entitles Blair to summary judgment.

### B. Failure to Warn

In their Second Amended Complaint, plaintiffs assert that
Blair

> negligently failed to warn or instruct, adequately
> warn or adequately instruct concerning the dangers of
> [Mrs. Michnovez's] bathrobe and the safe and proper
> method of using it in that it was excessively
> flammable, designed such that it was easy to ignite,
> difficult to remove in the event of fire, and did not
> comply with federal flammability standards.

Second Am. Compl. (doc. no. 44-3) ¶ 21(b).  In addition to the
foregoing claim for negligent failure to warn, plaintiffs also
assert the following product-liability claim:

> [D]efendant placed said defective product [i.e., Mrs.
> Michnovez's robe] in the stream of commerce knowing
> that it would be used without substantial change and
> said product proved to be defective as a result of the
> failure of the defendant to properly inspect, test,
> market, advertise, sell, and supply said product to
> prevent it from becoming unreasonably dangerous and
> unsafe for its foreseeable and intended use as set
> forth in Paragraph 21 herein[.]

14

Id. ¶ 23.[4]  Somewhat charitably, see note 4, Blair appears to
construe paragraph 23 of the Second Amended Complaint as
asserting a design-defect claim based upon an alleged failure to
provide an adequate warning.  Blair moves for summary judgment
on plaintiffs' failure-to-warn theory, arguing that: (1) "the
fact that clothing, including bathrobes, can burn when exposed
to flame is an open and obvious danger for which no warning is
required," Def.'s Mem. of Law (doc. no. 85-1), at 18; and (2) in
the event a warning was required, "plaintiffs cannot prove that
a particularized warning would have prevented Mrs. Michnovez
from acting as she did on the morning of the incident," id.
Plaintiffs disagree categorically.

    Blair's argument rests almost entirely on the First
Circuit's opinion in Wilson.  Wilson was a product-liability
action, decided under New Hampshire law, that involved a

_____

    [4] This is a very odd product-liability claim.  Plaintiffs
charge Blair with placing a "defective product in the stream of
commerce," but they do not allege either a manufacturing defect
or a design defect, a category that includes the lack of an
adequate warning, see Chellman v. Saab-Scania AB, 138 N.H. 73,
77-78 (1993).  Rather, they allege that Mrs. Michnovez's robe
was defective because Blair did not "properly inspect, test,
market, advertise, sell, and supply" it.  Paragraph 23 sounds
more like a negligence claim than a strict-liability claim.
With regard to that conflation, the New Hampshire Supreme Court
has explained: "While we note that both counts are permitted, we
do not recommend to plaintiffs that counts in both negligence
and strict liability against the same defendant be submitted to
the jury because of the confusion which is created."  Thibault,
118 N.H. at 811-12.  Plaintiffs would be well advised to heed
that advice as this case moves toward trial.

sweatshirt that caught fire when the person wearing it "leaned across a kitchen stove to turn off [a] burner" that was being used to heat a tea kettle.  250 F.3d at 13.  Blair places more weight on Wilson than that opinion can bear.

### 1. Duty to Warn

In Wilson, the court of appeals reported, but had no occasion to rule on, the trial court's decision at summary judgment to "dismiss[ ] so much of plaintiff's failure to warn claim as involved an obvious danger," id. at 14, that obvious danger being "the danger that clothing can catch fire if exposed to a heated stove burner," id.  At the same time, however the trial court

> reserved for trial the issue whether [the defendant] had a duty to warn of the "particular" flammability characteristics of the sweatshirt that were not obvious, specifically the possibility that the sweatshirt could "ignite spontaneously," could "be very difficult to extinguish," or could "melt and cause a more severe burn."

Id.  Following the trial court in Wilson, this court rules that to the extent plaintiffs assert that Blair owed Mrs. Michnovez a duty to warn her of the obvious danger that her robe could catch fire if exposed to a lit burner on a gas stove, Blair is entitled to summary judgment on the failure-to-warn claims stated in paragraphs 21(b) and 23.

That said, the court agrees with plaintiffs that their failure-to-warn claims go beyond asserting the breach of a duty

to warn of the obvious danger that a cotton chenille robe could catch fire when exposed to an open flame; plaintiffs claim that Blair owed Mrs. Michnovez a duty to warn her about how quickly her robe would burn if it did catch fire, and that it could be difficult to remove in the event of fire.  Given that under New Hampshire law, "obviousness of the harm [is a] question of fact to be decided by the jury," Collins v. the Tool Exchange LLC, No. Civ. 01-302-M, 2002 WL 31395929, at *1 (D.N.H. Oct. 16, 2002) (quoting Price, 142 N.H. at 390), the court grants summary judgment on only as much of the failure-to-warn claim as is based on the danger that Mrs. Michnovez's robe could catch fire if exposed to an open flame; the remainder of plaintiffs' failure-to-warn claim survives Blair's argument that it had no duty to warn Mrs. Michnovez about the flammability of her robe.

### 2. Effectiveness of a Warning

The Wilson court made no decision with respect to a seller's duty to warn, but merely reported what the district court had done.  It did, however, render a decision on the plaintiffs' failure-to-warn claim.  It affirmed the district court's determination, in the context of a motion under Rule 50(a) of the Federal Rules of Civil Procedure, "that [the] plaintiff[s] had failed to prove that a more particularized warning as to the unwonted flammability characteristics of the sweatshirt would have prevented Ailsa's spontaneous act of

17

reaching for the kettle."  <u>Wilson</u>, 250 F.3d at 14-15.  More specifically, the court held that the district court did not err by: (1) "viewing the effect of a warning from Ailsa's vantage, rather than from the perspective of her mother," <u>id.</u> at 15; or (2) "fail[ing] to instruct the jury as to the so-called 'read and heed' presumption approved by <u>Restatement (Second), Torts</u>, § 402A, comment j," <u>id.</u> at 15-16.

Rather than arguing that one or both of the two rulings the court of appeals made in <u>Wilson</u> supports its position in some particular way,[5] Blair does little more than argue that it is entitled to summary judgment on plaintiffs' failure-to-warn claim because the defendant in <u>Wilson</u> prevailed on its Rule 50(a) motion.  Blair's argument is not persuasive, in light of the factual differences between the two cases, their different procedural postures, and most significantly, Blair's failure to provide any sort of legal reasoning or analysis.

### C. Count II

Count II is a claim for enhanced compensatory damages.  In it, plaintiffs assert that Blair engaged in conduct that was wanton, malicious, or oppressive.  Blair moves for summary judgment, arguing that: (1) enhanced compensatory damages are a remedy rather than a cause of action; and (2) this case does not

---

[5] Such an argument would be difficult to make, in that this case involves neither an adult who purchased a product for a child nor jury instructions.

present the kind of exceptional circumstances that would warrant an award of enhanced compensatory damages.  Plaintiffs appear to concede Blair's first point, but contest the second.

"Under New Hampshire law, a claim for enhanced damages is not a separate cause of action; it is a request for a particular remedy." Minion Inc. v. Burdin, 929 F. Supp. 521, 523 (D.N.H. 1996) (citation omitted).  Accordingly, Blair is entitled to dismissal of Count II as a free-standing cause of action.  See Precourt v. Fairbank Recon. Corp., ___ F. Supp. 2d ___, ___, 2012 WL 707080, at *15 (D.N.H. Mar. 5, 2012).  But, as in Precourt, the court is disinclined to take the possibility of enhanced compensatory damages off the table, given its inability to predict how the evidence will come in at trial.  Accordingly:

> If the evidence at trial is sufficient to warrant an instruction on enhanced compensatory damages, the jury will be given an instruction with proper definitions of the relevant terms.  If the evidence is insufficient, as a matter of law, the jury will not be instructed on enhanced compensatory damages.

Id. at *16.

### D. Count VI

Count VI is Susan Michnovez's claim for negligent infliction of emotional distress.  She asserts that as a result of "direct emotional shock from being at the scene of the incident and observing the injuries and death of her mother-in-law and the injuries to her husband," Second Am. Compl. ¶ 36,

she "sustained serious mental and emotional strain accompanied by objective physical symptoms," id. ¶ 37.  The complaint does not further identify the "objective physical symptoms" Susan claims to have suffered.  Blair argues that it is entitled to judgment as a matter of law on Count VI because Susan has produced no evidence of any physical manifestation of her emotional distress, and has "identified no expert who will testify that [she] suffered emotional harm so severe that it caused [her] to suffer physical symptoms of that distress." Def.'s Mem. of Law (doc. no. 85-1), at 10.  Plaintiffs contend that Susan's nightmares, and her difficulty getting back to sleep after she has had them, are the physical manifestation of her emotional distress and that such an obvious physical manifestation does not require expert testimony.

In New Hampshire, "[t]he elements of a claim for negligent infliction of emotional distress include: '(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms.'" Tessier v. Rockefeller, 162 N.H. 324, 342 (2011) (quoting O'Donnell v. HCA Health Servs. of N.H., Inc., 152 N.H. 608, 611 (2005)).  In O'Donnell, the New Hampshire Supreme Court elaborated:

> To recover for emotional distress under a traditional negligence theory, we have consistently required plaintiffs to demonstrate physical symptoms of their distress regardless of physical impact.

20

> Palmer v. Nan King Restaurant, 147 N.H. 681, 683-84
> (2002); Thorpe v. State, 133 N.H. 299, 304 (1990).
> Because pain experienced upon the death, illness or
> injury of a loved one is an emotional cost borne by
> everyone living in society, "[t]he law intervenes only
> when the plaintiff bears an unusual or aggravated
> burden." Nutter v. Frisbie Mem. Hosp., 124 N.H. 791,
> 796 (1984) (quotation omitted). Consequently, we have
> held that the emotional harm must be a significant,
> painful mental experience with lasting effects.
> Palmer, 147 N.H. at 684. To ensure that the emotional
> injury is sufficiently serious to be afforded legal
> protection as well as to establish causation, we have
> repeatedly held that "expert testimony is required to
> prove physical symptoms suffered from alleged
> negligent infliction of emotional distress." Silva v.
> Warden, N.H. State Prison, 150 N.H. 372, 374 (2003).

152 N.H. at 611-12 (parallel citations omitted).

The opinion in O'Donnell teaches that the expert-testimony

requirement serves two purposes; it establishes both the

seriousness of the emotional injury and the causal relationship

between that injury and the defendant's alleged negligence.

Regarding the former, the New Hampshire Supreme Court has held

"that when damages for impact are not sought, expert testimony

is required to prove that the plaintiff experienced physical

symptoms from the alleged emotional distress." Thorpe, 133 N.H.

at 305. That is, "expert testimony is required to prove that

[the plaintiff] suffered physical symptoms and to prove

causation." Thorpe, 133 N.H. at 303. (emphasis added). As the

Thorpe court further explained:

> In Chiuchiolo [v. N.E. Wholesale Tailors], we
> determined that a plaintiff could recover damages for
> mental distress under a theory of negligence only if
> he or she suffered physical symptoms as a result of

21

the emotional distress.  Chiuchiolo, 84 N.H. [329,] 337-38 [(1930)].  This court expounded on the negligence theory in Corso, wherein we stated:

> "The emotional harm . . . cannot be insignificant.  Recovery is not to be permitted for 'mere upset, dismay, humiliation, grief and anger.'
>
> The emotional harm must be a painful mental experience with lasting effects. . . .  In other words, the harm for which plaintiff seeks to recover must be susceptible to some form of objective medical determination and proved through qualified medical witnesses."

133 N.H. at 302-03 (quoting Corso v. Merrill, 119 N.H. 647, 652-53 (1979)) (parallel citation omitted).

Here, it is undisputed that plaintiffs have disclosed no expert who will offer testimony in support of Susan's claim for negligent infliction of emotional distress.  They argue, however, that under the circumstances of this case, no expert testimony is required.  They are wrong.

According to plaintiffs, the rule "requir[ing] expert testimony to link physical injury to emotional distress . . . does not apply where 'it is within the ken of average lay people what mental and emotional harm might result.'"  Pl.'s Mem. of Law (doc. no. 86-1), at 9 (quoting O'Donnell, 152 N.H. at 612).  Plaintiffs' reliance on O'Donnell is misplaced.  To be sure, the opinion in that case did note that the court had allowed recovery for emotional distress damages without requiring expert testimony in cases involving "direct physical injury and/or

intentional torts where 'it is within the ken of average lay people what mental and emotional harm might result.'"  152 N.H. at 612 (citation omitted).  But, the O'Donnell court expressly "decline[d] the invitation to expand this exception to the negligent infliction of emotional distress to bystanders under the facts of [the] case [before it]," id.  Thus, O'Donnell does not relieve plaintiffs of the burden of providing expert testimony in this case.

O'Donnell makes it clear that a plaintiff asserting a claim for negligent infliction of emotional distress may recover only for emotional distress that is "unusual or aggravated," that is a "significant, painful mental experience," and that is "sufficiently serious."  See 152 N.H. at 611.  The purpose of the expert-testimony requirement is to prevent recovery for the "emotional cost[s] borne by everyone living in society."  Id.; see also Bresnahan v. McAuliffe, 712 N.E.2d 1173, 1177 (Mass. App. Ct. 1999) (pointing out the risk of fraudulent claims for negligent infliction of emotional distress).  Here, plaintiffs' failure to secure an expert to provide testimony on either the third element of Susan's claim or the issue of causation forecloses her claim, under O'Donnell, and entitles Blair to judgment as a matter of law on Count VI.

**Conclusion**

For the reasons described above, Blair's motion for summary judgment, document no. 85, is granted in part and denied in part.  Specifically, Blair is entitled to summary judgment on: (1) as much of the failure-to-warn claims stated in Count I as involve a duty to inform consumers of the obvious danger that clothing can catch fire when exposed to an open flame, see Wilson, 250 F.3d at 14; (3) Count II, but only to the extent that plaintiffs' claim for enhanced compensatory damages is dismissed as a free-standing cause of action (the availability of such damages remains an open question); and (3)  Count VI, Susan's claim for negligent infliction of emotional distress. Blair's motion is otherwise denied.  Finally, in the interest of simplifying what is, even in its third iteration, a perplexingly pled case, the court dismisses Count III sua sponte, for the same reasons that support summary judgment in favor of Blair on Count II.  Mrs. Michnovez's conscious pain and suffering may well factor into the damages available under one or more of plaintiffs' theories of liability, but conscious pain and suffering is not a free-standing cause of action.

Based on the foregoing, this case now consists of: the negligence, breach-of-warranty, and strict-liability claims stated in Count I, minus the negligence theory stated in

paragraph 12(e), and with a slightly narrowed failure-to-warn

theory; and Count IV, John's claim for personal injury.

　　　　SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge


July 5, 2012

cc: David P. Angueira, Esq.
    Eric K. Blumenfeld, Esq.
    Alan L. Cantor, Esq.
    Joel Thomas Emlen, Esq.
    Dona Feeney, Esq.
    Bruce W. Felmly, Esq.
    James C. Fitzpatrick, Esq.
    D. Patterson Gloor, Esq.
    Theodore V.H. Mayer, Esq.
    Steven M. Shear, Esq.
    Edward M. Swartz, Esq.
    Jori L. Young, Esq.